UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————
                                :

HIGROUND CO., LTD. and             :
HIGROUND PTE. LTD.,              :
                                  :
                 Plaintiffs,     :        Civil Action No: 1:23-cv-08618
                                  :
    -against-                    :
                                  :        **VERIFIED COMPLAINT**

HENRY HAN-WOONG LEE,      :
GENESIS DIGITAL ASSETS PTE. LTD.,  :
GENESIS GROUP PARTNERS, LLC,   :
NEON PARTNERS, LLC,           :
STONEFORT CONSULTANTS FZC,    :
PETRA ECO BUILD SDN BHD,      :
WEST RANCH CAPITAL          :
MANAGEMENT,                   :
JULES CORPORATION,          :
and JONATHAN CHAN          :
                                  :
                 Defendants.   :
                                  :
———————————————————————:

       Plaintiffs HIGROUND CO., LTD. and HIGROUND PTE. LTD. as and for their Verified

Complaint against Defendants HENRY HAN-WOONG LEE, GENESIS DIGITAL ASSETS

PTE. LTD., NEON PARTNERS, LLC, STONEFORT CONSULTANTS FZC, PETRA ECO

BUILD SND BHD, WEST RANCH CAPITAL MANAGEMENT, JULES CORPORATION

and JONATHAN CHAN allege as follows:

## PRELIMINARY STATEMENT

1.   Defendant Henry Han-Woong Lee ("Lee") upon information and belief lives in New York

     City and is a director and owner of Genesis Digital Assets PTE. LTD. ("GDA").

2.   Defendant Lee established Defendant GDA in Singapore on April 9, 2019. It is inactive, and

     according to the Accounting and Corporate Regulatory Authority ("ACRA"), its capital is

     only $1 USD. It is a shell company.

3.  Defendant Lee was notified that the name, "Higround Pte. Ltd." was available for a company to be established in Singapore. Subsequently, Plaintiff Higround Pte. Ltd. was created in Singapore on April 8, 2019.

4.  Plaintiff Higround Pte. executed a term loan to Defendant GDA for $5 million USD (the "Loan") under a term loan agreement on April 25, 2019 (the "Term Loan Agreement"), with a maturity date of May 24, 2022. The funds in question were borrowed from Plaintiff Higround Ltd. after being directly solicited by Defendants.

5.  Defendants, acting through Defendant Lee, created an elaborate scheme and established a complex, international network of numerous companies, including but not limited to GDA, in order to conceal the existence of a securities transaction and to induce Plaintiffs to provide funds through the Term Loan Agreement and thereby to provide funding for a digital assets license ("DAL"). Each of these defendant companies and individuals conspired amongst one another to achieve this goal.

6.  Defendant Lee initially promised that it would obtain the DAL, thereby expanding Plaintiffs' business into foreign markets and allowing Plaintiffs to receive periodic interest plus the loan principal at maturity. Plaintiffs relied on these specific representations as the basis upon which to make a loan.

7.  From the beginning, however, Defendants Lee, GDA, and Stonefort Consultants FZC ("Stonefort") never intended to repay the loan. They intended the transaction to be, and treated it as, a securities transaction; that is, Plaintiffs would share profits if the undertaking proved to be successful enough for him to decide to share the profits, but Plaintiffs would lose their entire investment otherwise—which they knew was the far likelier outcome.

8.  In order to explain the need for and justify the transfer of their funds to him, Defendant Lee promised Plaintiffs that with the DAL, he would seek film production and/or distribution opportunities for Plaintiffs in the countries which comprise the Association of Southeast Asian Nations ("ASEAN"), the Middle East, and ultimately the U.S., despite not having any intention to do so.

9.  Defendants Lee, GDA, and Stonefort informed Plaintiff Higround that securing media and film production opportunities through the DAL would help Higround's business and guarantee payment of any indebtedness to Higround. They also promised that Plaintiffs would reap profits, in the form of interest, from their investment.

10. Contrary to these statements, however, Defendants Lee, GDA, and Stonefort never secured media or film production opportunities, nor followed through with any of the agreements they entered into among themselves.

11. Defendant Lee, acting in his personal capacity and on behalf of GDA and Stonefort, sent a series of transactional emails and documents to Plaintiffs, stating that their goal was to use the Global Blockchain Foundation to market Higround's content worldwide on emerging technology platforms, and toward this goal Defendants GDA and Stonefort made a loan collateral agreement ("Loan Collateral Agreement) and a joint venture agreement on March 27, 2019 ("Joint Venture Agreement").

12. The stated purpose of the Loan Collateral Agreement and Joint Venture Agreement was, among other things, to explore media and film production opportunities in the ASEAN countries and in the Persian Gulf region for Higround.

13. However, none of this was ever intended by Defendants GDA and Stonefort, and no work was ever performed by either of them pursuant to the Loan Collateral Agreement or Joint Venture Agreement.

14. Because Defendant Lee reassured Plaintiffs with a series of documents, Plaintiff Higround believed and relied on Defendants GDA and Stonefort's representations as to their industry experience and assurances that the investment in the DAL would ensure their media business's success.

15. Higround further relied on GDA and Stonefort's representations that the investment would be collateralized by Stonefort.

16. In the Collateral Agreement and Joint Venture Agreement, Defendant Stonefort was described as having substantial experience in the entertainment industry and the business of media distribution and marketing, and media content distribution in particular.

17. However, upon information and belief, Defendant Stonefort was not in such a business, but a business in asset management and general trading. Stonefort owns 100% of Invensys Investments LTD, established in 2008, which in turn owns 100% of Invensys Finance Investments LLC, established in April 2019. The main business of both firms was asset management, general trading, and finance brokering. *See* Exhibit E.

18. By May 28, 2019, Plaintiffs had transferred the sum of $5M USD to Defendants, but as of July 2023, Defendants had only returned a total of $1,267,698.79 USD.

19. Despite numerous demands, Defendant GDA has not repaid $4.75 million as agreed on January 6, 2023, to Plaintiff Higround Pte., as guaranteed by Defendant Lee in his personal capacity and on behalf of GDA.

20. This action seeks damages and all other available legal relief arising from wrongful conduct by Defendants and their co-conspirators including but not limited to, in the alternative, their breach of loan agreement, their common law fraudulent representations, their statutory acts of racketeering and their acts of statutory securities fraud, as well as other causes of action set forth herein. A copy of the Term Loan Agreement between Defendant GDA and Higround, dated April 25, 2019, is annexed hereto as Exhibit A. Copies of the Joint Venture Agreement and Loan Collateral Agreement between Defendants GDA and Stonefort, both dated March 27, 2019,[1]  are annexed hereto as Exhibits B and C.

## JURISDICTION AND VENUE

21. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff seeks a judgment for Defendant's violation of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5, Section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(a) thereunder and the Racketeer Influenced and Corrupt Organizations Act of 1970 ("RICO"), 18 U.S.C. §§ 1961-1968.[2]

22. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Defendant Lee resides in this District and is subject to personal jurisdiction and venue in this District.

## PARTIES

23. Plaintiff Higround Co., Ltd. ("Higround Ltd.") was established on May 27, 2014, in Korea. Its address is 42, Donggyo-ro 17-gil, Mapo-gu, Seoul, Korea. Higround Ltd. is in the motion

---

[1]Personal identifying data and trade secrets have been redacted from all exhibits.

[2]Subject matter jurisdiction also exists pursuant to 28 U.S.C. § 1332(a)(2) because this is an action between the citizen or subject of a foreign state and the citizen of a State, and the amount in controversy exceeds $75,000 exclusive of interest, costs or attorneys' fees.

picture and video industries and produces and distributes media programs, including dramas. It is an affiliated company of BRV Lotus Growth Fund 2015, L.P. in Cayman Islands. And it is affiliated with BlueRun Ventures ("BRV"). BRV has a subsidiary in Korea and is headquartered in 545 Middlefield Rd #250, Menlo Park, CA 94025, United States.

24. Plaintiff Higround Pte. Ltd ("Higround Pte.") was incorporated in Singapore on April 9, 2019. Its address is 60 Paya Lebar Road, #08-13, Paya Lebar Square, Singapore 409051. Higround Ltd. is affiliated with Higround Pte. Higround Ltd. and Higround Pte. are jointly referred to herein as "Higround."

25. Defendant Genesis Digital Assets PTE. LTD. ("GDA") is a private limited company, incorporated on April 10, 2019, in Singapore. Its address is 1 Goldhill Plaza, #03-39, Goldhill Plaza, Singapore 308899.  The company's paid-up capital is $1 USD. Defendant GDA started its transaction activity on January 3rd, 2019.

26. Defendant Henry Han-Woong Lee ("Lee") is a director and owner of Defendant GDA. Defendant Lee is a U.S. citizen and lives in 350 W 42nd St. Apt. 18K, New York, NY 10036-6954. His U.S passport number is 56------9. He is a graduate of NYU's Stern School of Business. On April 10, 2019, Lee was appointed as a director of Defendant GDA owning 1 stock of ordinary class of share with the value of $1 USD. Defendant Lee also owns Invensys Fund which is registered at 36-38 Grand Rue, L-1660, Luxembourg Grand Duchy of Luxembourg ("Invensys Fund"), and Genesis-Neon Holdings, LLC ("Genesis-Neon"), which is registered in Sharjah Media City, Sharjah, United Arab Emirates.  Defendant Lee also oversees the strategy and finance of Defendant Neon Partners, LLC, ("Neon Partners"), the investment management division of Genesis Group Partners, LLC ("Genesis Group").

27. Defendant Genesis Group shares offices located at 1250 Broadway, 36th Floor, New York, NY 10001.

28. Upon information and belief, as of August 2023, Genesis-Neon Group, LLC ("Genesis-Neon Group"), including Defendant Neon Partners, shares offices located at 1250 Broadway, New York, NY 10001. It does not have its own physical office.

29. Upon information and belief, Defendant Stonefort Consultants FZC ("Stonefort") is incorporated under the laws of the UAE with its registered office at Office 102 Concorde Tower, Cluster H, Jumeirah Lake Towers, Dubai, UAE.

30. Upon information and belief, Defendant Petra Eco Build Sdn Bhd ("Petra Eco") is a limited company incorporated under the laws of the Federation of Malaysia with its Singapore office at Blk 2023 Bt Batok St 23 #01-96 Singapore 659528.

31. Upon information and belief, Defendant West Ranch Capital Management ("WRCM") is located at 111 Congress Ave, Austin, TX 78701. It is not registered in Texas.

32. Upon information and belief, Defendant Jules Corporation ("Jules Corporation") is a Singaporean company with an address of 71 Ayer Rajah Crescent, Singapore 139951.

33. Upon information and belief, Defendant Jonathan Chan ("Chan") is the founder and CEO of Jules Corporation and upon information and belief resides in Singapore.

## FACTS

34. On April 15, 2019, Defendant Lee sent an email to Jung Han Woo ("Woo"), a managing partner of BlueRun Ventures ("BRV") in Korea, to suggest making a general consulting agreement between Defendant GDA and Plaintiff Higround ("Consulting Services Agreement"). BRV is an affiliated company of Higround.  The scope of Defendant GDA's work would be to provide general business and investment strategies for Higround in line

with and in support of Higround's growth objectives. The compensation method would be determined periodically on a project-basis including general loan, cash remuneration and other ways agreeable to both parties. *See* Exhibit K.

35. On April 16, 2019, in an email to Defendant Lee and others, Woo stated, "regarding a request for drafting a consulting and loan contract for Higround Pte., which will be made after the bridge loan I mentioned, Defendant Lee recommended us to make a legal document between the firm that will receive the loan and Higround Pte. I will explain it further to you orally later." *See* Exhibit K.

36. Upon information and belief, the Consulting Services Agreement was signed by both Plaintiff Higround and Defendant GDA. *See* Exhibit S.

37. Shortly thereafter, on May 9, 2019, Defendant Lee directed and recommended that Plaintiff Higround transfer $5 Million USD to Defendant GDA for a license deposit for the benefit of Defendant GDA. *See* Exhibit H. Defendant Lee promised that Defendant GDA would buy the DAL with the money and return profits as a form of interest from the loan investment made by Plaintiff Higround. Defendant Lee also promised that with the license, Plaintiff's business and profits would expand.

38. Per the Term Loan Agreement's terms, Defendant GDA would borrow $5 million USD with interest at a rate of 7% per annum. The due date was May 24, 2022.  Fees due in the event of default were 10% per annum or the maximum rate allowed by law, whichever was less. Defendant GDA agreed to pay all costs incurred by Higround in collecting sums due after a default, including reasonable attorneys' fees.  Defendant Lee signed as director on behalf of Defendant GDA. *See* Exhibit A.

39. On May 10, 2019, Defendant Lee signed a personal guaranty on the Term Loan Agreement.

40. On May 11, 2019, Defendant Lee sent an email with the heading "Re: Guaranty for Genesis Digital Assets Pte. Ltd." to Higround and its director, Hae-Suk Chung ("Chung"), guarantying the repayment of the Loan. *See* Exhibit I.

41. In that email, Genesis-Neon Group and its affiliates ("Guarantors"), agreed to guarantee full payment on the Term Loan Agreement and pay Higround on demand any sum which may become due.

42. On May 14, 2019, Higround delivered $1,500,000 USD from a bank in Singapore to Defendant GDA by transferring it to Stonefort for the benefit of Defendant GDA under GDA's instructions.

43. On May 28, 2019, Higround delivered $3,500,000 USD from a bank in Singapore to Defendant GDA by transferring it to Stonefort for the benefit of Defendant GDA under GDA's instructions.

44. On July 31, 2019, Defendant Lee emailed Woo of Higround, stating that the goal for Plaintiff's investment in the DAL was for Higround to become a "premier leader" in (a) Korea media content creation; (b) cross-border media content creation with K-pop mixed local synergies; (c) dynamic distribution of Higround Korea's content utilizing strong local media and political relationships in Southeast Asia first and the Middle East and Europe/USA thereafter; (d) innovative utilization of blockchain technology to grow Higround's business not just in Korea, but globally (with the Global Blockchain Foundation to market Higround Korea content worldwide on emerging technology platforms). *See* Exhibit L.

45. In the same email, Defendant Lee also asked Plaintiffs not to mention the "IC Memo" to BRV, stating, "Please don't mention the 'broker-dealer and asset management firm' to BRV people. It'll ignite automatic intense, needless due diligence. The project manager may get

tempted to accuse of management negligence and potentially fraud since these are not related to Higround's business." *See* Exhibit L.

46. Although Chung and Woo found the email odd and felt very uncomfortable about its surreptitious appearance, Defendant Lee reassured them by stating in the email that a General Partner of Neon Partners guaranteed the amount of the Loan, and since the Loan had already been disbursed by that time, Higround followed Defendant Lee's instruction and did not share the acquired information.

47. On October 23, 2020, Defendant and Plaintiff agreed to choose New York for its jurisdiction for any disputes regarding the Term Loan Agreement. *See* Exhibit G.

**A. Defendants Lee, Genesis Group, and Genesis Group's affiliates guaranteed the repayment of the Loan. Defendant Lee guaranteed the Loan in his individual capacity.**

48. In order to reassure Higround and avoid questions about liability and other risk from Higround, Defendant Lee emailed a letter dated May 11, 2019, with the heading "Re: Guaranty for Genesis Digital Assets Pte. Ltd." to Chung and Higround (the "May-11 Letter"). The letter stated, "I do hereby waive notice of default, nonpayment and notice thereof and consent to any modification or renewal of the credit agreement hereby guaranteed." *See* Exhibit I.

49. On May 10, 2019, Defendant Lee signed the above with his printed individual name, "Henry H. Lee," a personal guaranty.  Lee also wrote his U.S. passport number above his signature as support for his personal guaranty and his personal identification.

50. In the May-11 Letter, Defendant Lee also stated that Genesis-Neon Group and its affiliates ("Guarantor"), located at 1250 Broadway, New York, NY 10001, for and in consideration of lender extending credit to borrower, agreed to guarantee in full and pay Higround on demand

any sum which may become due whenever Defendant GDA shall fail to pay the same. This guaranty was termed a continuing and irrevocable guaranty.

51. In February 2021, a Loan Modification and Collateral Agreement ("February 2021 Loan Modification and Collateral Agreement") was expected to be executed reconfirming the liability of the guarantors to the Loan. *See* Exhibit D.

52. Under this agreement, the stated collateral for the Loan was the pledge of six million seven hundred thirty thousand (6,730,000) outstanding shares of common stock of Jules Corporation by Defendant Chan, the founder and CEO of Jules Corporation.  Additionally in this agreement, the parties agreed to the exclusive jurisdiction of the state or federal courts located within New York County, New York for any disputes arising in connection with the agreement. *See* Exhibit D. Defendant GDA also designated Scott Hur, Esq. at Hur, Lash & Choe, LLP as counsel. *See* Exhibit D.

53. Plaintiffs relied on numerous documents Defendant Lee sent regarding the value of stocks of Jules Corporation, the pledge of shares of Jules Corporation by Jonathan Chan, and promises by Defendant Lee that they would soon be executed.

**B. In order to disguise the fraudulent scheme, Defendants GDA and Stonefort entered into the Loan Collateral and Joint Venture Agreements in an apparent attempt to convince Higround that they were planning to secure rights in media and film production projects, which would purportedly add value to their companies.**

54. On March 27, 2019, prior to the Term Loan Agreement, Defendants GDA and Stonefort entered into the Loan Collateral Agreement. *See* Exhibit C.

55. In the Loan Collateral Agreement, Defendants GDA and Stonefort agreed to guarantee their respective obligations, as specified and agreed to in the Joint Venture Agreement.  *See* Exhibit C.

56. Both parties agreed not to sell or transfer ownership of the collateral specified in the Loan Collateral Agreement until the Loan from Higround has been fully repaid. *See* Exhibit C, 2.1.4.

57. The agreement also provided that "should GDA default on Loan, Higround shall have the right to seize the listed collateral and resell it to recoup their lost investments." *See* Exhibit C, 2.1.5.

58. Defendant Lee sent the Loan Collateral Agreement to Higround to emphasize the purported protection it would afford Higround.

59. However, Defendant Stonefort never provided, nor intended to provide, the collateral as specified in the Loan Collateral Agreement.

60. That same day on March 27, 2019, Defendants GDA and Stonefort also entered into the Joint Venture Agreement.  Under the Joint Venture Agreement, Defendant Stonefort was responsible for securing relevant rights (including ownership or licensing rights) in film works and/or film production projects in the ASEAN countries and Gulf region. *See* Exhibit B, 2.1.1.

61. Had this Joint Venture Agreement been carried out as agreed, Higround would have established relationships with various media companies and likely partnered with them, thereby enhancing its business and increasing the value of its company.

62. Upon information and belief, Defendant Stonefort neither secured nor tried to secure any rights in film works.

63. Higround later learned that from its incorporation in 2019 until April 5, 2022, Defendant GDA had been dormant. *See* Exhibit J.

64. Moreover, Defendants Lee and GDA collaborated with each other to frustrate Plaintiffs' efforts to obtain repayment under the Term Loan Agreement, causing a delay that led to Plaintiffs' detriment.

65. Defendants never intended to return much of the investment.

66. However, to fend off any action by Plaintiffs, Defendants returned a total of $1,267,698.79 USD in the years since the Term Loan Agreement was executed.

67. For example, on April 26, 2021, Defendant Lee sent $499,990 to Plaintiff through Hur, Lash & Choe, LLP, which was located at 600 Sylvan Ave. Ste. 109, Englewood Cliffs, New Jersey, 07632. *See* Exhibit P.

68. On May 17, 2021, Defendant Lee additionally sent $249,990 to Plaintiff through Hur, Lash & Choe, LLP. *See* Exhibit P.

69. During this time, Defendants also created and provided multiple Loan reaffirmations to Plaintiff, confirming and reconfirming the final Loan amount and interest due.

70. During this time, Defendants manipulated and provided false information to Plaintiffs by amending the Loan Term Agreement and fabricating supports to induce Plaintiffs' continued reliance on the Loan and mislead Plaintiffs into believing that Defendants would return their money.

71. Relying on various representations and alleged promises that repayment was imminent, Plaintiffs continuously deferred taking action against Defendants, reduced interest and extended the maturity date.  To instill false confidence in their ability and intent to repay the Loan, Defendants provided the following to Plaintiffs:

a. On or about February 19, 2021, Defendant Lee provided an agreement letter from Defendant Chan, the CEO of Jules Corporation in Singapore, to Plaintiffs, pledging

Chan's six million seven hundred thirty thousand (6,730,000) shares of outstanding common stock of Jules Corporation as collateral to ensure the prompt payment of the Loan under the Term Loan Agreement. *See* Exhibit D.

b. In a letter addressed to Plaintiff Higround Pte., Defendant Chan stated, "I personally own the shares being pledged as the Collateral [and] confirm my commitment to assist in the transfer of Collateral to [Higround Pte.] should it be necessary." Chan also made the following representations and "confirmation of support" for GDA:

> 1. I have an understanding with [GDA] regarding the Collateral Agreement and the contents thereof;
> 2. Jules Corporation has received necessary approvals for the listing of Jules Corporation with public equity valuation at listing of between US$80 – 100 million;
> 3. The Collateral will be transferred to [Higround Pte.] with cooperation of Jules Corporation should it be required in accordance with the Collateral Agreement; and
> 4. Borrower intends to satisfy the payment obligations related to the loan by the maturity date.

*See* Exhibit Q.

c. Defendant Chan's letter goes on further to state that "this expression of support demonstrates the strong and complimentary relationship that we have maintained with Borrower over the years."  *See* Exhibit Q.

d. Upon information and belief, Defendant Chan never intended to pledge any shares nor collateralize anything toward the Loan; rather, Chan knowingly and/or negligently allowed Defendant Lee to use Chan and Jules Corporation's names, thereby conspiring with Lee for the purpose of perpetrating fraud upon Plaintiffs.

e. Based on the February 2021 Loan Modification and Collateral Agreement, together with the letter dated February 19, 2021, Plaintiffs were convinced that the Loan was

safely secured and would be fully repaid. Thereafter, Plaintiffs succumbed to Defendant's request for extension and change of the loan maturity date and loan terms.

f. On May 13, 2021, Plaintiff agreed to lower the interest and default payment to $250,000 USD and agreed to a payment within three business days.

g. On May 20 and May 27, 2021, Plaintiff again agreed to extend the payment date and change the payment terms.

h. On July 8, 2021, Defendant Lee forwarded a letter to Higround that he had purportedly received from Michael Bangash, a managing partner of West Ranch Capital Management ("WRCM"). The letter stated that Neon Partners had sought a bridge finance loan for its operational needs and executed an agreement with WRCM. *See* Exhibit O.

i. Questionably, Michael Bangash is also a chairman of Neon Partners.

j. In the letter, WRCM agreed to the following terms:

> Put-option value of the underlying asset not to exceed ("Value"): $5.25 million.
> Activation date ("Activation Date"): 30 days from the Signature date
> Put-option valuation lock-in period ("Lock-In Period"): 60 days from the Activation Date." ("Put Option Counter-Party Agreement").
> Put Option Counter-Party Agreement was executed by Michael Bangash on July 8, 2021.

*See* Exhibit O.

k. Plaintiffs were told that once Neon Partners received a bridge finance loan from WRCM, it would be used to pay off the Loan.

l. Unsurprisingly, this never happened. There was no bridge finance loan, and it remains to be seen if any such loan application was even made or any such agreement executed.

m. Upon information and belief, WRCM never made any bridge finance loan to Neon Partners nor paid any portion thereof to Plaintiffs.

n. Michael Bangash and WRCM knew or should have known that the Put Option

Counter-Party Agreement would be relied on by the third party, Plaintiffs, but WRCM

had no intention of supplying any financial support to Neon Partners.

o. On April 5, 2022, Plaintiff and Defendant agreed to alter "2. Due Date" of the Term

Loan Agreement dated April 25, 2019, and to negotiate postponement the loan repayment

schedule for the Term Loan Agreement and amendment dated March 7, 2020, because the

pandemic had affected Defendant's business and initial plan of distributing content. *See*

Exhibit R.

p. On April 8, 2022, Petra Eco, a limited company incorporated in Malaysia, and

Defendant GDA made a loan agreement for $5 Million USD with two years of maturity

("Petra Loan Agreement").

q. Defendant Lee was a primary principal for this transaction. As in WRCM, Defendants

Lee, Petra Eco, GDA knew and agreed that any money received through this Loan

Agreement would be used to pay off the Loan.

r. The Petra Loan Agreement stated that $5 Million would be funded on

> April 15, 2022 with up to seven Singapore banking day disbursement window
> period thereafter pending regulatory approvals including Central Bank
> international wires. Disbursement shall be confirmed within 48 hours of
> regulatory and remittance approvals as time is of the essence.

s. Again, no funding was established in April or May of 2022.

t. On November 3, 2022, Defendant Petra Eco wrote a letter to Defendant GDA

("November-3 Petra Eco Letter") stating the following:

> This communication affirms the definitive commitment of the [Petra Eco] to
> promptly fund the agreed loan of approximately 5 million dollars to [GDA].
> The funding with borrower will be done promptly, within 7 banking days of
> closing by the Disclosing Party with a private debt facility, Islamic Development
> Bank or any other funding source, with commitment for best-efforts execution

and negotiation of required agreements and financing documents within a 1.5 - 2.5 weeks window.

*See* Exhibit M.

u. Elated, and relying on this letter, on November 4, 2022, Chung, Higround's director, sent the November-3 Petra Eco Letter as an attachment to an internal email, stating that it was a letter from Petra agreeing to provide a loan within 2 weeks. *See* Exhibit N.

v. Yet again, there was no funding of any kind from Defendant Petra Eco during that time.

72. On December 19, 2022, based on numerous loan reaffirmations and amendments to the Loan Agreement provided by Defendant Lee, Plaintiffs sent out a "Last Overdue Account Reminder" whereby demand was made by Plaintiffs that the "loan in the amount of $4,750,000" plus interest be paid by "December 26, 2022". *See* Exhibit N.

73. On December 21, 2022, Chung sent an email to Defendant Lee to request a confidence letter or Defendant Lee's sincere action that the Loan would be repaid. Chung requested at least a partial repayment, or at least in the alternative a bi-annual financial report from Defendants GDA, Neon Partners, or Stonefort. *See* Exhibit N.

74. Subsequently, on January 6, 2023, Plaintiff Higround sent an email to Defendant Lee requesting information about when and how the loan would be repaid and whether any repayment progress had been made, and seeking clarification as to when Petra Eco's loan would close. Higround requested a reply by January 10, 2023. *See* Exhibit N.

75. In the same email thread, Defendant Lee emailed Plaintiffs stating, "per our discussion, GDA is in the process of working to arrange for the $4.75 million agreed outstanding repayment amount and working towards closing." *See* Exhibit N.

76. As of July 2023, Plaintiff has not received any payment against the Loan in the amount of $4.75 million from Defendant Lee and/or Defendant GDA and/or its affiliates, and all

Defendants have been silent and non-responsive to any and all communication by Plaintiffs.
Therefore, no further negotiation pertaining to the loan repayment schedule, as agreed on
April 5, 2022, could be held.

**FIRST CAUSE OF ACTION**
**(a. Breach of Contract for Plaintiff Higround Pte.**
**as Against Defendant GDA)**

77. Plaintiff repeats and re-alleges the foregoing allegations in the preceding paragraphs as if
    fully set forth herein.

78. Defendant entered into contracts with Plaintiffs for loans and the guaranty of loans. Plaintiff
    Higround Pte. made a term loan to Defendant GDA for $5 million USD (the "Loan") under a
    term loan agreement on April 25, 2019 (the "Term Loan Agreement"), with an initial
    maturity date of May 24, 2022.

79. Plaintiff fulfilled all obligations under the contracts.

80. On May 14, 2019, Higround delivered $1,500,000 USD from a bank in Singapore to
    Defendant GDA by transferring it to Stonefort for the benefit of Defendant GDA under
    GDA's instructions.

81. On May 28, 2019, Higround delivered $3,500,000 USD from a bank in Singapore to
    Defendant GDA by transferring it to Stonefort for the benefit of Defendant GDA under
    GDA's instructions.

82. Defendant violated and materially breached the terms and conditions of the contracts. They
    failed to use the funds intended for investment to benefit the joint business and they failed to
    repay the loans.

83. Defendant only returned a total of $1,267,698.79 USD in the years since the Term Loan
    Agreement was executed.

84. On April 5, 2022, Plaintiff and Defendant agreed to alter "2. Due Date" of the Term Loan Agreement dated April 25, 2019, and to negotiate to postpone the loan repayment schedule for the Term Loan Agreement. *See* Exhibit R.

85. However, Defendant has been silent and non-responsive to any and all communication by Plaintiff. Therefore, no further negotiation pertaining to the loan repayment schedule, as agreed on April 5, 2022, could be held.

86. On December 19, 2022, based on numerous loan reaffirmations and amendments to the Loan Agreement, Plaintiff sent out a "Last Overdue Account Reminder" whereby demand was made by Plaintiff that the "loan in the amount of $4,750,000" plus interest be paid by "December 26, 2022". *See* Exhibit N.

87. As of July 2023, Plaintiff has not received any payment against the Loan in the amount of $4.75 million from Defendant GDA.

88. As a result of Defendant's breach, Plaintiff was damaged.

**(b. Breach of Contract for Plaintiff Higround Pte.
as Against Defendants Lee, Genesis-Neon Group and its affiliates)**

89. On May 10, 2019, Defendant Lee signed the above with his printed individual name, "Henry H. Lee," a personal guaranty.

90. In the May-11 Letter, Defendant Lee also stated that Genesis-Neon Group and its affiliates agreed to guarantee in full and pay Higround Pte. on demand any sum which may become due whenever Defendant GDA shall fail to pay the same.

91. In the letter, Defendant Lee stated, "I do hereby waive notice of default, nonpayment and notice thereof and consent to any modification or renewal of the credit agreement hereby guaranteed." *See* Exhibit I.

92. Since May 17th, 2021, Defendant GDA has not paid any amount as agreed.

93. However, Defendants Lee, Genesis-Neon Group and its affiliates failed to pay Higround Pte. any sum.

**WHEREFORE**, Plaintiff Higround Pte. respectfully request that this Court enter a judgment:

    a. <u>declaring that Defendants have breached their agreements with Plaintiff HIground Pte.;</u>

    b. <u>declaring that defendant' breach was willful;</u>

    c. <u>enjoining future violations of the agreement by Defendants;</u>

    d. <u>awarding Plaintiff Higround Pte. compensatory damages;</u>

    e. <u>awarding Plaintiff Higround Pte. liquidated damages;</u>

    f. <u>awarding Plaintiff Higround Pte. punitive damages;</u>

    g. <u>awarding Plaintiff Higround Pte. pre- and post-judgment interest;</u>

    h. <u>awarding Plaintiff Higround Pte. reasonable attorneys' fees and costs; and</u>

    i. <u>awarding such other and further relief as the Court deems just and proper.</u>

<u>SECOND CAUSE OF ACTION</u>
**(Fraud for All Plaintiffs against Defendants Lee, GDA, Stonefort)**

94. Plaintiffs repeat and re-allege the foregoing allegations contained in the preceding paragraphs as if fully set forth herein.

95. Defendants made material misrepresentations of fact regarding various transactions upon which they caused Plaintiffs to rely.

96. Plaintiff Higround Pte., which pleads in the alternative to its breach of contract cause of action, and Plaintiff Higround Ltd. were both informed at various times that they were being asked to engage in a guaranteed loan transaction with one or more persons and/or entities

with whom they had a fiduciary relationship, in other words a very low risk transaction for which they would be compensated with a relatively modest interest rate.

97. They were also informed that their funds would be spent on compelling and legitimate business purposes which would give rise to substantial profits and make the transaction even less risky.

98. Neither Plaintiff Higround Pte. Nor Higround Ltd. would have committed funds to an investment transaction of the type that was never disclosed to them, though Defendants knew the information was material.

99.  The specific misrepresentations they received and upon which they relied include, but are not limited to, those set forth below.

   a.  <u>For Higround Pte.</u>

100.  In the Loan Collateral Agreement, Defendant Stonefort agreed that it would provide matching collateral as comfort. *See* Exhibit C.

101.  However, Defendant Stonefort never provided, nor intended to provide, the collateral as specified in the Loan Collateral Agreement. *See supra* ¶¶ 54-59.

102.  Also, in the Joint Venture Agreement, Defendant Stonefort was mentioned as having experience in the entertainment industry and the business of media distribution and marketing and, in particular, media content distribution.

103.  However, upon information and belief, Defendant Stonefort was not in such a business, but in the businesses of asset management and general trading. *See supra* ¶ 17.

104.  Also, in the Collateral Agreement and Joint Venture Agreement, Defendant Lee and Stonefort agreed that they would seek film production and/or distribution opportunities for Plaintiff in ASEAN and the Middle East. However, this never happened. *See supra* ¶¶ 60–

63.

      b. <u>For Higround Ltd.</u>

105.  In his email to Woo on April 15, 2019, Defendant Lee stated that the compensation method would be determined periodically on a project-basis, including the general loan. *See* Exhibit K. Also, per the Term Loan Agreement's terms dated April 25, 2019, Defendant GDA would borrow $5 million USD with interest at a rate of 7% per annum. *See* Exhibit A. However, Defendants Lee and GDA never paid the entire loan principal amount plus interests as agreed, *See supra* ¶¶ 70–75.

106.  Defendants intended to induce Plaintiffs to rely upon these misrepresentations, and Plaintiff did rely upon them. *See* Exhibits K, L.

107.  In reliance on these misrepresentations, Plaintiffs expended the significant sum of $5,000,000 USD.

108.  Defendants returned only $1,267,698.79 USD in the years since and Plaintiffs were thus damaged as a result of these misrepresentations, which were made willfully and maliciously.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter a judgment:

      a. **<u>declaring that Defendants intentionally defrauded Plaintiffs;</u>**

      b. **<u>declaring that Defendants' fraud was willful;</u>**

      c. **<u>enjoining future acts of fraud by Defendants;</u>**

      d. **<u>awarding Plaintiffs compensatory damages;</u>**

      e. **<u>awarding Plaintiffs liquidated damages;</u>**

      f. **<u>awarding Plaintiffs punitive damages;</u>**

      g. **<u>awarding Plaintiffs pre- and post-judgment interest;</u>**

**h. awarding Plaintiffs reasonable attorneys' fees and costs; and**

**i. awarding such other and further relief as the Court deems just and proper.**

### THIRD CAUSE OF ACTION
**(Rescission for All Plaintiffs against Defendants Lee, GDA, Stonefort)**

109. Plaintiffs repeat and re-allege the foregoing allegations contained the preceding paragraphs as if fully set forth herein.

110. Defendants misrepresented, concealed or didn't disclose a material fact that the Term Loan Agreement was in fact, a risky investment in the DAL.

111. Defendants intended to deceive Plaintiffs.

112. An injury resulted from justifiable reliance by Plaintiffs because Defendants returned only $1,267,698.79 USD, causing injury in the amount of $3,732,301.21 USD.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter a judgment:

**a. declaring that Defendants intentionally converted property belonging to Plaintiffs;**

**b. declaring that Defendants' conversion was willful;**

**c. enjoining future acts of conversion by Defendants;**

**d. awarding Plaintiffs compensatory damages;**

**e. awarding Plaintiffs liquidated damages;**

**f. awarding Plaintiffs punitive damages;**

**g. awarding Plaintiffs pre- and post-judgment interest;**

**h. awarding Plaintiffs reasonable attorneys' fees and costs; and**

**i. awarding such other and further relief as the Court deems just and proper.**

**j.**

## FOURTH CAUSE OF ACTION
### (Conspiracy for All Plaintiffs against All Defendants)

113.  Plaintiffs repeat and re-allege the foregoing allegations contained in the preceding

paragraphs as if fully set forth herein.

114.  Defendants agreed between themselves to take actions in furtherance of fraud and

conversion against Plaintiffs.

115.  Defendants took specific actions, to wit, fraud and conversion, in furtherance of their

Agreement to inflict a wrong against Plaintiffs.

116.  Plaintiffs were damaged as a result of this conspiracy between the Defendants.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter a judgment:

   a.  **declaring that Defendants conspired to commit torts against Plaintiff;**

   b.  **declaring that Defendants' conspiracy was willful;**

   c.  **enjoining future acts of conspiracy by Defendants;**

   d.  **awarding Plaintiffs compensatory damages;**

   e.  **awarding Plaintiffs liquidated damages;**

   f.  **awarding Plaintiffs punitive damages;**

   g.  **awarding Plaintiffs pre- and post-judgment interest;**

   h.  **awarding Plaintiffs reasonable attorneys' fees and costs; and**

   i.  **awarding such other and further relief as the Court deems just and proper.**

## FIFTH CAUSE OF ACTION
### (Accounting for All Plaintiffs against Defendant Lee, GDA, Stonefort)

117.   Plaintiffs repeat and re-allege the foregoing allegations contained in the preceding
paragraphs as if fully set forth herein.

118.   Defendants have sole and exclusive control over business records relating to the business
activity described herein.

119.   Plaintiffs cannot determine the full extent of their damages without access to the books and
records of the defendants.

120.   Therefore, Plaintiffs seek a court-ordered accounting of such books and records as they
pertain to the marketing and sales of the goods at issue herein.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter a judgment:

     a.   declaring  that  Defendants have sole and exclusive control over important
records relating to Plaintiffs' business operations;

     b.   directing the appointment of an auditor who shall provide an accounting of
such records to Plaintiffs;

     c.   awarding  Plaintiffs  reasonable  attorneys'  fees  and  costs;  and

     d.   awarding  such  other  and  further  relief  as  the  Court  deems  just  and proper.

### SIXTH CAUSE OF ACTION
**(Breach of Fiduciary Duty and Duty of Loyalty for All Plaintiffs
against Defendant Lee and GDA)**

121.   Plaintiffs repeat and re-allege the foregoing allegations contained in the preceding
paragraphs as if fully set forth herein.

122.   Defendants stood in a position of trust vis-à-vis Plaintiffs in regard to the actions
complained of herein. Under the Consulting Services Agreement, as a business
consultant, Defendant Lee has reposed trust or confidence in Plaintiffs who thereby
gained a resulting superiority or influence over the first.

123.   Defendants owed Plaintiffs a duty of loyalty as described herein. Defendant Lee was under a duty to act for or to give business advice for Plaintiffs within the scope of relation.

124.   Defendants knew that Plaintiffs had granted them certain authority and accepted certain risks and costs. Plaintiffs transferred $5 Million USD to Defendant GDA and Lee for the consulting service for investment in the DAL.

125.   Defendants violated their fiduciary duty and duty of loyalty to Plaintiffs. Defendants only returned a total of $1,267,698.79 USD, causing injury in the amount of $ 3,732,301.21.

126.   Plaintiffs were damaged as a result of this violation.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter a judgment:

    a.  **declaring that Defendants intentionally breached their fiduciary obligations to Plaintiffs and their duties of loyalty to Plaintiffs;**

    b.  **declaring that Defendants' actions were willful;**

    c.  **enjoining future acts of breach of fiduciary duty by Defendants;**

    d.  **awarding Plaintiffs compensatory damages;**

    e.  **awarding Plaintiffs liquidated damages;**

    f.  **awarding Plaintiffs punitive damages;**

    g.  **awarding Plaintiffs pre- and post-judgment interest;**

    h.  **awarding Plaintiffs reasonable attorneys' fees and costs; and**

    i.  **awarding such other and further relief as the Court deems just and proper.**

### SEVENTH CAUSE OF ACTION
**(Alternative to First Cause of Action, Quantum Meruit, Unjust Enrichment and Constructive Trust for Plaintiff Higround Pte. as Against Defendants Lee, GDA)**

      a.    <u>Quantum Meruit and Unjust Enrichment</u>

127.  Plaintiffs repeat and re-allege the foregoing allegations contained in the preceding

      paragraphs as if fully set forth herein.

128.  Defendants obtained property belonging to Plaintiffs, $5 Million, and earned income,

      without paying proper compensation to Plaintiffs.

129.  Defendants reaped profits from the wrongful disposition of Plaintiffs' property which

      were not paid to or shared with Plaintiffs. Defendants only returned a total of

      $1,267,698.79 USD, causing injury in the amount of $ 3,732,301.21.

130.  Plaintiffs were damaged as a result.

      b.    <u>Constructive Trust</u>

131.  There was a confidential or fiduciary relationship between Plaintiffs and Defendants.

132.  Defendants Lee and GDA promised that they would return interests plus the principal.

133.  Plaintiffs sent $5Million USD to Defendants in reliance on that promise; and

134.  Defendants only returned a total of $1,267,698.79 USD in the years and therefore,

      Defendants were unjustly enriched.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter a judgment:

      k.   **<u>declaring that Defendants received financial benefits from Plaintiffs to which they were not entitled;</u>**

      l.   **<u>declaring that Defendants' actions were willful;</u>**

      m.   **<u>enjoining future receipts of benefits by Defendants;</u>**

      n.   **<u>awarding Plaintiffs compensatory damages;</u>**

      o.   **<u>awarding Plaintiffs liquidated damages;</u>**

      p.   **<u>awarding Plaintiffs punitive damages;</u>**

    q.  **awarding Plaintiffs pre- and post-judgment interest;**

    r.  **awarding Plaintiffs reasonable attorneys' fees and costs; and**

    s.  **awarding such other and further relief as the Court deems just and proper.**

### EIGHTH CAUSE OF ACTION
**RICO Conspiracy under Section 1962(d) to Violate Section 1962(c)
for All Plaintiffs as Against All Defendants**

135.  Plaintiffs repeat and re-allege the foregoing allegations in the preceding paragraphs as if fully set forth herein.

136.  Defendants conspired to commit or agreed to commit acts in violation of the Federal RICO Act, 18 U.S.C. § 1962 (c) and (d).

137.  Defendants conspired, agreed to, and did conduct and participate in the conduct of such scheme through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Plaintiffs.

138.  In furtherance of their scheme to defraud Plaintiffs, Defendants conspired to enter fraudulent contracts with Plaintiffs for loans and for the guaranty of loans.

139.  Defendant GDA is affiliated, in some form, with each of the other Defendants. Each Defendant guaranteed and/or collateralized the Term Loan Agreement between Plaintiffs and Defendant GDA.

140.  These fraudulent guarantees and collateralizations were effectuated using various communications and legal instruments.

141.  Each of these communications and legal instruments were executed with the sole intent to defraud Plaintiffs and instill in them a false sense of security in their investment.

142.  Pursuant to and in furtherance of their fraudulent scheme, Defendants agreed to commit

multiple related acts of mail and wire fraud. The acts set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. §1961 (5).

**The Enterprises**

143. The "Enterprises" as defined under 18 U.S.C. § 1961 (4) were Defendants Genesis Digital Assets PTE. LTD.; Neon Partners; Stonefort Consultants FZC, Petra Eco, WRCM, and Jules Corporation. Defendant Lee is the founder and owner of GDA. Defendant Jonathan Chan is the founder and CEO of Jules Corporation.

**Racketeering Activity**

144. The pattern of racketeering activity, as defined in 18 U.S.C. § 1961(1) and § 1961(5), consisted of the following racketeering acts, among numerous others:

Racketeering Act One-Mail and Wire Fraud

145. On March 27, 2019, Defendants Stonefort and GDA entered into pretextual Joint Venture and Loan Collateral Agreements to purportedly "advise on and arrange for media content related business opportunities in Territories … on behalf of Higround Pte Ltd." *See* Exhibit C, Section A; *see generally* Exhibits A-C.

146. Defendant Stonefort agreed to provide "matching collateral as comfort" in the event that Higround Pte Ltd. extended a loan to Defendant GDA. *See* Exhibit C, Section C.

147. These agreements were executed with the sole purpose of inducing Plaintiffs to extend a loan to Defendant GDA. Plaintiffs later did so, in reliance on same, by executing the Term Loan Agreement and transferring $5 million USD to Stonefort via wire transfer under Defendant GDA's instructions.

Racketeering Act Two-Mail and Wire Fraud

148. On May 10, 2019, with the intent to defraud Plaintiffs, induce them to extend a loan, and

falsely reassure them that the same would be repaid, Defendant Lee signed a personal

guaranty above his printed name and U.S. passport number, as support for his personal

identification.

149.   Defendant Lee transmitted this personal guaranty to Plaintiffs via email the next day, on

May 11, 2019.

150.   These representations were made with the sole purpose of inducing Plaintiffs, under false

pretenses, to disburse the funds via wire transfer.

Racketeering Act Three-Mail and Wire Fraud

151.   Also in the May-11 Email, and also with the purpose of obtaining the funds from Plaintiffs,

Defendant Lee fraudulently represented that Genesis-Neon Group and its affiliates agreed

to guaranty the Term Loan Agreement in full and pay Higround on demand any sum which

may become due, in the event that Defendant GDA fail to pay the same. *See supra* ¶ 50.

152.   Like Defendant Lee's fraudulent representations as to his personal guaranty, these

representations were made with the sole purpose of inducing Plaintiffs, under false

pretenses, to disburse the funds via wire transfer. Plaintiffs did so in reliance on same.

Racketeering Act Four-Mail and Wire Fraud

153.   Induced by the Joint Venture and Loan Collateral Agreements between Defendants GDA

and Stonefort, Plaintiff Higround entered into an agreement with Defendant GDA on April

25, 2019 to extend a $5 million loan. *See* Exhibit A.

154.   Further induced by Defendants Lee and Genesis-Neon's purported guarantees on the loan,

Plaintiff Higround Pte. Ltd. transferred the total loan disbursement of $5 million to

Stonefort, pursuant to the Term Loan Agreement and per GDA's instructions, via two

payments on May 14, 2019 and May 28, 2019.

155.  Through their false and fraudulent pretenses, representations, and promises, Defendants GDA, Stonefort, and Lee caused Plaintiffs to transfer this sum, the full balance of which remains unpaid, via wire transfer.

Racketeering Act Four-Mail and Wire Fraud

156.  In another email communication on July 31, 2019, Defendant Lee falsely represented to Plaintiffs that a General Partner of Neon Partners had also guaranteed the loan. *See supra* ¶ 44-46.

157.  This representation, which was made after the funds had already been disbursed via wire transfer, was made in continuance of Defendants' fraudulent scheme, in order to reassure Plaintiffs that the Loan would be repaid and to lull Plaintiffs into a false sense of security.

Racketeering Act Five-Mail and Wire Fraud

158.  In February 2021, in a Loan Modification and Collateral Agreement between Defendant GDA and Higround Pte. Ltd., the Guarantors' liability was reconfirmed, and the term of the loan was shortened by one year, with a new maturity date of May 24, 2021. *See supra* ¶¶ 51-53, 71(a)–(e).

159.  The February 2021 agreement also represented Defendant Chan's agreement to pledge as collateral six million seven hundred thirty thousand (6,730,000) outstanding shares of Jules Corporation common stock, in order to "ensure the prompt payment of the Loan and the performance of the Borrower's other obligations in accordance [with] the Loan Agreement." *See supra* ¶¶ 71(a)–(e).

160.  In a letter to Plaintiffs dated February 19, 2021, Defendant Chan confirmed this commitment and further represented that he personally owned the aforementioned shares.

161.  Each of these fraudulent acts and false representations were undertaken in continuance of

Defendants' fraudulent scheme to falsely reassure Plaintiffs that the Loan would be repaid and to lull them into a false sense of security.

<u>Racketeering Act Six-Mail and Wire Fraud</u>

162. On July 8, 2021, Defendant Lee forwarded a letter received from Defendant WRCM falsely representing that it had executed an agreement for a bridge finance loan for Defendant Neon Partner's operational needs. *See supra* ¶ 71(h)–(n)

163. Plaintiffs were informed that Neon Partner would use this bridge finance loan to pay off the Loan.

164. Relying on these false representations, Plaintiffs agreed to change the loan repayment schedule and loan terms on April 8, 2022.

165. These false representations were undertaken in continuance of Defendants' fraudulent scheme, in order to reassure Plaintiffs that the Loan would be repaid and to lull Plaintiffs into a false sense of security.

<u>Racketeering Act Seven-Mail and Wire Fraud</u>

166. On April 8, 2022, Defendants GDA and Petra Eco purportedly executed a loan agreement for $5 Million with two years of maturity ("Petra Loan Agreement"). *See supra* ¶ 71(p)–(v).

167. Defendant Lee was a primary principal for this transaction. As in WRCM, Defendants Lee, Petra Eco, and GDA knew and agreed that any money received through this Loan Agreement would be used to pay off the Loan. Defendant Petra Eco confirmed the loan via letter to Defendant GDA on November 3, 2022.

168. These false representations were undertaken in continuance of Defendants' fraudulent scheme, to reassure Plaintiffs that the loan would be repaid and to lull Plaintiffs into a false

sense of security.

169. As a direct and proximate result of Defendants' racketeering activity, Plaintiffs have been injured in their business and property, pursuant to 18 U.S.C. § 1341 and § 1343, in the amount of $4.75 million USD.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter a judgment pursuant to 18 U.S.C. § 1964(c):

      a. awarding Plaintiff treble damages according to proof;

      b. awarding Plaintiff pre- and post-judgment interest;

      c. permanent injunction against further racketeering activity;

      d. awarding Plaintiff reasonable attorneys' fees and costs; and

      e. awarding such other and further relief as the Court deems just and proper.

t.      <u>**NINTH CAUSE OF ACTION**</u>

**(Violation of the Securities Exchange Act 10(b), 20(a), SEC Rule 10b-5 for All Plaintiffs as Against Defendants Lee, GDA and Stonefort)**

170. Plaintiffs repeat and re-allege the foregoing allegations contained the preceding paragraphs as if fully set forth herein.

171. Section 10(b) of the Exchange Act makes it unlawful "to use or employ, in connection with the purchase or sale of any security ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78j(b).

172. The Term Loan Agreement for the DAL was an investment contract, and therefore a security, within the meaning of the Securities and Exchange Act, because it provided for

the investment of money in a common enterprise with a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others.

173. Under BRV and Defendant Lee's direction, Plaintiff Higround Ltd. created Higround Pte. in Singapore to facilitate a nominal transaction for investment in the DAL.

174. Plaintiff Higround Ltd. invested $5,000,000 in the DAL through Higround Pte. under Defendant Lee's direction, through which it reasonably expected to earn profits in the form of periodic interest payments.

175. In entering the Term Loan Agreement, Plaintiffs relied on the managerial and entrepreneurial efforts of Defendants Lee, Stonefort, and their affiliates to manage the digital assets and to exercise project proposals that would generate profits for Plaintiffs without Plaintiffs' prior approval.

176. Plaintiffs' expectation was strengthened by brochures and explanations that Defendant Lee sent via email. *See* Exhibits K, F, L.

177. Because Defendants held themselves out as experts in the blockchain and financial management and technology, Plaintiffs relied on their purported expertise.

178. Defendants made numerous materially false and misleading statements via emails in connection with and as inducement for Plaintiffs' purchase of a security under the Term Loan Agreement. *See* Exhibits K, L.

179. On April 25, 2019, Defendant Lee falsely promised that Defendant GDA would buy the DAL with Plaintiffs' money and return profits as a form of interest under the Term Loan Agreement and Consulting Services Agreement discussed on April 15, 2019. *See* Exhibits A, H, K, S. Even if Defendant GDA did purchase the DAL with the funds transferred by Plaintiffs, Defendant Lee never returned profits in the form of interest as he promised. *See*

Exhibit J.

180. Also on April 25, 2019, Defendants Lee and GDA falsely represented under the Term Loan
Agreement, that the principal, $5,000,000, would be repaid at maturity and that Plaintiff
would earn periodic interest at a rate of 7% per annum. *See* Exhibit A. This never happened
because, as stated above, Defendant Lee and GDA failed to even repay the full principal.

181. Defendant GDA had no intention of fulfilling its material obligations under the Term Loan
Agreement at the time it was entered into, as evidenced by the following:

a.   Defendant GDA had been dormant since its incorporation. *See supra* ¶ 63; *see
also* Exhibit J.

b. On July 31, 2019, Defendant Lee sent an email to Woo asking him not to mention
the "IC Memo" or "broker-dealer and asset management firm" to BRV to avoid
"intense, needless due diligence" as well as accusations of negligence and/or
fraud. *See supra* ¶ 45; *see also* Exhibit L.

c. In the same email, Defendant Lee stated that "we should try not to focus on [the]
'guarantee' to BRV people (KY/PM) since they may use deal aspects to make life
hard for us …. Let's not give too much information to [the Project Manager]." *See*
Exhibit L.

d. On June 12, 2023, Defendant Lee sent a brochure of Neon Partners and its
affiliates, stating that they were specialists and representing its address as 1250
Broadway, New York, NY 10001. *See* Exhibit F. In fact, Genesis-Neon Group,
including Neon Partners, does not even have its own physical office.

e. Defendant Lee continuously stated in his emails that he would return the amount
of Plaintiffs' initial investment plus interests through other funding sources. For

example, in February 2021, Defendant Lee promised to provide stock in Jules
Corporation as a pledge. In April 2022, Defendant Lee promised that he would be
able to secure necessary funding from Petra Eco. However, Defendant Lee's
promises were never performed, and Defendant GDA did not return a substantial
portion of the Loan.

   f.  In January 2022, after Plaintiffs finally demanded return of the money, Defendant
Lee falsely stated that GDA was in the process of arranging for the return of the
$4.75 million outstanding balance.

   g.  In April 2022, Plaintiffs and Defendants Lee and GDA agreed to alter the "Due
Date" of the Term Loan Agreement and to negotiate to postpone the loan
repayment schedule for the Term Loan Agreement. *See* Exhibit R. Since that time,
however, all Defendants have been silent and non-responsive to any type of
Plaintiffs' communications, precluding any further negotiation for the repayment
schedule.

182. Each of the above statements were material because they impacted the likelihood that the
contemplated loan would be repaid, such that a reasonable investor would have considered
them important.

183. Plaintiff would not have agreed to purchase the security described in the Term Loan
Agreement absent Defendants' false and misleading statements.

184. In reliance on this purported guarantee, Plaintiff transferred the funds to Defendant
Stonefort under Defendant GDA's instructions. *See supra* ¶¶ 42-43.

185. Defendants Lee and GDA breached their fiduciary duties in connection with the sale of
securities by failing to repay Plaintiffs and by making material misrepresentations in

furtherance of their fraudulent scheme.

186. Even if Higround trusted Defendant Lee to make transactions on its behalf without prior approval, Defendant Lee never disclosed to Plaintiffs details of any of these purported transactions, despite Plaintiffs' subsequent demands for information. *See* Exhibit N.

187. The false and misleading statements were material due to the substantial likelihood that despite Defendants' representations, the Term Loan Agreement was not intended to be a loan with an anticipated maturity date, but an investment that ran the risk of total loss. *See* Exhibit L.

188. The false and misleading statements were also material because they pertained to Defendants' management of digital assets and in fact specified digital asset types that a reasonable investor would view as having significant value, such as Ethereum and Hyperledge.

189. Defendants' false representations that some of these affiliated companies were located in New York, an expensive metropolitan area, when the companies did not even have their own physical offices, were individually and collectively material; Plaintiffs would not have transacted business with them had they been aware of this. *See* Exhibit F.

190. Defendant Lee only provided a company brochure of Neon Partners, an incorporation certificate of Invensys Investments Ltd., a memorandum of association of Invensys Finance Investments LLC, and a memorandum of association of Invensys Investments Ltd., an affiliate of Defendant Stonefort. *See* Exhibits E, F.

191. On April 5, 2022, without providing any detailed transaction information, Defendant Lee claimed that the book value of the license was $5,000,000 USD yet failed to provide any relevant information, instead offering comparisons with other kinds of digital assets and

markets. *See* Exhibit J.

192. Relying on Defendants' material false statements, including a promise to return profits, Plaintiffs transferred $5 million USD to Defendants, only $1,267,698.79 USD of which was repaid. As a result, Defendants' fraudulent scheme caused injury to Plaintiffs.

193. Defendants Lee and GDA were primary violators under the Securities Exchange Act of 1934 because Defendant GDA is a shell company that was used as a vehicle for Defendant Lee's fraud.

194. Defendant Stonefort was a "controlling person" within the meaning of the Exchange Act, and accordingly is jointly and severally liable for the acts of its agent, Defendant GDA, by contract. 15 U.S.C. § 78t(a).

195. Defendant Stonefort had actual knowledge of the scheme to defraud and knowingly acted in furtherance of that scheme.

196. Defendants GDA and Stonefort executed the Joint Venture Agreement and Loan Collateral Agreement with the intent to defraud Plaintiffs, and Defendant Stonefort received money transferred from Plaintiffs for the benefit of Defendant GDA. *See* Exhibits B, C, H.

197. The transaction was "domestic" within the meaning of the Securities Exchange Act of 1934 because the parties incurred irrevocable liability in carrying out the transaction within the United States.

198. Furthermore, the parties agreed on October 23, 2020, to the exclusive jurisdiction of the state or federal courts located within New York County, New York for any disputes arising in connection with the agreement. *See* Exhibit G.

199. Defendant Lee, a US citizen, repeatedly communicated with Plaintiffs and BRV, a US investor, about the investment. Even if Plaintiff transferred money from a bank in

Singapore, Plaintiffs' wire transfers were carried out under BRV's control and direction.

200.  Defendant Lee directed and recommended that Higround transfer $5 million USD to

Defendant Stonefort for the benefit of Defendant GDA, a shell company. *See* Exhibit H.

All communications regarding the wire transfer were sent to Defendant Lee in New York.

201.  On April 26, 2021, Defendant Lee sent $499,990 to Plaintiffs through Hur, Lash & Choe,

LLP. *See supra* ¶ 67; *see also* Exhibit P.

202.  On May 17, 2021, Defendant Lee sent an additional $249,990 to Plaintiffs, again through

Hur, Lash & Choe, LLP. *See supra* ¶ 68; *see also* Exhibit P.

203.  In an email to Chung on December 15, 2020, Hur, Lash & Choe, LLP claimed to be

Defendant GDA's attorneys. *See* Exhibit T.

204.  By reason of the foregoing, Defendants Lee, GDA, and Stonefort, individually and in

concert, violated Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5

thereunder, 17 C.F.R. § 240.10b-5, Section 20(a) of the Securities Exchange Act of 1934,

15 U.S.C. § 78t(a).

**WHEREFORE**, Plaintiffs respectfully request that this Court enter a judgment:

a.  awarding Plaintiffs out-of-pocket loss, the difference between price

paid and actual value at the time of Plaintiffs' purchase;

b.  awarding Plaintiffs actual damages;

c.  ordering the Defendants, jointly and severally, to disgorge, with

prejudgment interest, all ill-gotten gains derived from the violations;

d.  permanently restraining and enjoining Defendants from violating

Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5

17 C.F.R. § 240.10b-5 thereunder;

e.  awarding Plaintiffs consequential damages, including lost dividends, brokerage fees, and taxes;

f.  awarding Plaintiffs rescissory measure of damages, including the amount paid plus interest and other expenses attributable to Defendants' fraud;

g.  awarding Plaintiffs restitution of the securities;

h.  awarding Plaintiffs reasonable attorneys' fees and costs; and

i.  awarding such other and further relief as the Court deems just and proper.

**KIM & BAE, P.C.**
Attorneys for Plaintiffs

By: _____/s/ *Bong June Kim*_____
Bong June Kim, Esq. (BK-6989)

**JURY DEMAND**

Plaintiffs demand a trial by jury.

Dated: October 2, 2023

**KIM & BAE, P.C.**
Attorneys for Plaintiffs

By: _____/s/ *Bong June Kim*_____
Bong June Kim, Esq. (BK-6989)

# VERIFICATION

_HAE SUK CHUNG_____, of full age, hereby certifies:

I am the Executive Director of Higround Co., Ltd., Plaintiff in the above-entitled matter.
I have held this position since _____2018_____ . My responsibilities include monitoring the
contractual agreements and financial records of Higround Co., Ltd. I have read the foregoing
Verified Complaint and certify that the allegations contained therein are true to the best of my
knowledge, information and belief.

I certify that the foregoing statements are true. I am aware that if any statement made
herein is willfully false, I am subject to punishment.

Dated: October 2, 2023