UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

|  |  |  |
|---|---|---|
| HIGROUND CO., LTD. and HIGROUND PTE. LTD., | : | |
| | : | |
| | : | |
| Plaintiffs, | : | Civil Action No: 1:23-cv-08618-JSR |
| | : | |
| -against- | : | **SECOND AMENDED** |
| | : | |
| | : | **COMPLAINT** |
| HENRY HAN-WOONG LEE, | : | |
| GENESIS DIGITAL ASSETS PTE. LTD., | : | |
| GENESIS GROUP PARTNERS, LLC, | : | |
| NEON PARTNERS, LLC, | : | |
| NEON PARTNERS LLC, and | : | |
| GENESIS-NEON GROUP, LLC, | : | |
| | : | |
| Defendants. | : | |

_____ :

Plaintiffs HIGROUND CO., LTD. ("HCL") and HIGROUND PTE. LTD. ("HPL")

(collectively "Plaintiffs" or "Higround") as and for their Second Amended Verified Complaint

against Defendants HENRY HAN-WOONG LEE, GENESIS DIGITAL ASSETS PTE. LTD.,

GENESIS GROUP PARTNERS, LLC, NEON PARTNERS, LLC, and GENESIS-NEON

GROUP, LLC, (collectively "Defendants") allege as follows:

## PRELIMINARY STATEMENT

1. On or about April 25, 2019, Plaintiffs loaned Five Million dollars ($5,000,000) to be repaid

   on May 24, 2022.  Prior to the execution of the loan agreement, defendant Henry Han-

   Woong Lee created documents that were executed by Plaintiffs which were designed to

   defraud Plaintiffs without their knowledge.

2.  In order to induce Plaintiffs to provide the loan, Defendants acted in concert to defraud
    Plaintiffs by creating shell companies and false documents and records.  Defendants' such
    schemes were carried out internationally in four different countries.

3.  Demand was duly made for the repayment of the loan in full.  To date, there is still an
    outstanding balance of $4,750,000.

4.  This action seeks damages and all other available legal relief arising from wrongful conduct
    by Defendants and their co-conspirators including but not limited to, in the alternative, their
    breach of loan agreement and guaranty, their common law fraudulent representations, and
    their acts of statutory securities fraud, as well as other causes of action set forth herein. A
    copy of the Term Loan Agreement between GDA and Higround, dated April 25, 2019, is
    annexed hereto as Exhibit A. Copies of the Joint Venture Agreement and Loan Collateral
    Agreement between Defendants GDA and Stonefort, both dated March 27, 2019,[1]  are
    annexed hereto as Exhibits B and C.

## JURISDICTION AND VENUE

5.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331
    because Plaintiff seeks a judgment for Defendant's violation of Section 10(b) of the
    Exchange Act, 15 U.S.C. § 78j(b), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5, Section 20(a)
    of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(a) thereunder.

6.  Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Defendant Lee
    resides in this District and is subject to personal jurisdiction and venue in this District.

## PARTIES

---

[1]Personal identifying data and trade secrets have been redacted from all exhibits.

2

7. Plaintiff HCL is a limited corporation existing under the laws of the Republic of Korea with its address at 42, Donggyo-ro 17-gil, Mapo-gu, Seoul, Korea.  HCL is in the motion picture and video industries and produces and distributes media programs, including popular Korean dramas on Netflix. It is an affiliated company of BRV Lotus Growth Fund 2015, L.P. in Cayman Islands. And it is affiliated with BlueRun Ventures ("BRV"). BRV has a subsidiary in Korea and is headquartered in 545 Middlefield Rd #250, Menlo Park, CA 94025, United States.

8. HPL is a limited corporation existing under the laws of Singapore with its address at 60 Paya Lebar Road, #08-13, Paya Lebar Square, Singapore 409051.

9. Defendant Henry Han-Woong Lee ("Lee") is a director and owner of Defendant GDA. Defendant Lee is a citizen of the United States with his address at 350 W 42nd Street Apt. 18K, New York, NY 10036-6954.  He is a graduate of NYU's Stern School of Business and held himself out as a financial expert. On April 10, 2019, Lee was appointed as a director of GDA owning 1 stock of ordinary class of share with the value of $1 USD.  As of March 2020, Lee also owns Invensys Fund which is registered at 36-38 Grand Rue, L-1660, Luxembourg Grand Duchy of Luxembourg ("Invensys Fund"), and Genesis-Neon Holdings, LLC ("Genesis-Neon"), which is registered in Sharjah Media City, Sharjah, United Arab Emirates. *See* Exhibit Z.  Lee also oversees the strategy and finance of  Defendant Neon Partners, the investment management division of Defendant Genesis Group, and the operations of Defendant GNG, and is authorized to sign on their behalf. Upon information and belief, Lee personally does business from the address 1250 Broadway, 36th Floor, New York, NY 10001.   Lee is also sued in his representative capacity as president and or treasurer of defendants Genesis Group, the Neon Partners entities and GNG to the extent those entities

are unincorporated associations or partnership rather than corporations as represented to

Plaintiffs.

10.   Genesis Digital Assets PTE. LTD. ("GDA") is a private limited company, incorporated on

April 10, 2019, in Singapore. Its address is 1 Goldhill Plaza, #03-39, Goldhill Plaza,

Singapore 308899.  The company's paid-up capital is $1 USD.  GDA started its transaction

activity on January 3, 2019.

11. Upon information and belief, defendant Genesis Group Partners LLC ("Genesis Group") is a

limited liability company organized and doing business in the State of New York, sharing

offices with its affiliate, GNG, located at 1250 Broadway, 36th Floor, New York, NY 10001.

To the extent it is an unincorporated association and/or partnership it is sued herein by suing

Lee, its member, partner, president and/or treasurer, in his representative capacity.

12. Upon information and belief, Defendant Neon Partners, LLC is a limited liability company or

unincorporated association or partnership organized under the laws of the State of Delaware

and actively doing business in the State of New York, sharing offices with its affiliate GNG

located at 1250 Broadway, 36th Floor, New York, NY 10001.  To the extent it is an

unincorporated association and/or partnership it is sued herein by suing   Lee, its partner,

president and/or treasurer, in his representative capacity.

13. Upon information and belief, Defendant Neon Partners LLC is a limited liability company or

unincorporated association or partnership organized under the laws of the State of Delaware

and actively doing business in the State of New York, sharing offices with its affiliate GNG

located at 1250 Broadway, 36th Floor, New York, NY 10001.  To the extent it is an

unincorporated association and/or partnership it is sued herein by suing Lee, its partner,

president and/or treasurer, in his representative capacity.

4

14. Upon information and belief, Genesis-Neon Group, LLC ("GNG"), is a limited liability company or unincorporated association or partnership organized under the laws of the State of Delaware or and actively doing business in the State of New York, sharing offices with its affiliates Neon Partners and Genesis Group located at 1250 Broadway, 36th Floor, New York, NY 10001.  To the extent it is an unincorporated association and/or partnership it is sued herein by suing   Lee, its partner, president and/or treasurer, in his representative capacity.

## **FACTUAL ALLEGATIONS**

15. Lee, upon information and belief, lives in New York City and is a director and owner of GDA.  Lee established   GDA in Singapore on April 9, 2019.  It is inactive, and according to the Accounting and Corporate Regulatory Authority of Singapore, its capital is reported to be only $1 USD. It is a shell company.

16. HPL was also organized under the laws of Singapore in April 2019. After being solicited by Lee, on April 25, 2019, HPL executed a term loan to GDA for $5 million USD (the "Loan") under a term loan agreement (the "Term Loan Agreement"), with a maturity date of May 24, 2022.

17. Thereafter, Defendants, acting through Lee, created an elaborate scheme and established a complex, international network of numerous companies, including but not limited to GDA. Such scheme was created in order to conceal the existence of securities transactions and to induce Plaintiffs to provide funds through the Term Loan Agreement and thereby to provide funding for a digital assets license ("DAL") which would give Plaintiffs certain contents distribution rights in the southeast Asia and the middle east. All of the Defendants conspired amongst one another to achieve this goal.

18. Lee initially promised that he would obtain the DAL, thereby expanding Plaintiffs' business into foreign markets and allowing Plaintiffs to receive periodic interest plus the loan principal at maturity. Plaintiffs relied on these specific representations as the basis upon which to make the Loan.

19. From the beginning, however, Defendants Lee, GDA, and, among others, a company called Stonefort Consultants FZC ("Stonefort"), acting in concert, never intended to repay the Loan. Unbeknownst to Plaintiffs, even before any loan documents were presented to Plaintiffs, Lee duped HCL into signing a consulting services agreement which rendered the subsequent Loan to become an investment agreement; that is, Plaintiffs would share profits if the undertaking proved to be successful enough for the borrowers to decide to share the profits, but Plaintiffs would lose their entire investment otherwise.

20. In order to induce Plaintiffs to extend the Loan, Lee promised Plaintiffs that with the DAL, he would seek film production and/or distribution opportunities for Plaintiffs in the countries which comprise of the Association of Southeast Asian Nations ("ASEAN"), in the Middle East, and ultimately in the U.S., despite not having any intention to do so.

21. Defendants Lee, GDA, and Stonefort informed Plaintiffs that securing media and film production opportunities through the DAL would help Plaintiffs' business and guarantee payment of any indebtedness to Higround.  They also promised to share with Plaintiffs their profits from their investment in DAL.

22. Contrary to these statements, however, Defendants Lee, GDA, and Stonefort never secured media or film production opportunities, nor followed through with any of the agreements they entered into among themselves.

23. Defendant Lee, acting in his personal capacity and on behalf of GDA and Stonefort, sent a series of transactional emails and documents to Plaintiffs, stating that their goal was to use the Global Blockchain Foundation to market Higround's content worldwide on emerging technology platforms, and toward this goal, Defendants GDA and Stonefort made a fictitious loan collateral agreement ("Loan Collateral Agreement) and a joint venture agreement on March 27, 2019 ("Joint Venture Agreement") to be relied on by Plaintiffs at a later date.

24. The stated purpose of the Loan Collateral Agreement and Joint Venture Agreement was, among other things, to explore media and film production opportunities in the ASEAN countries and in the Persian Gulf region for Plaintiffs.

25. However, none of this was ever intended by Defendants GDA and Stonefort, and no work was ever performed by either of them pursuant to the Loan Collateral Agreement or Joint Venture Agreement.

26. Because Lee reassured Plaintiffs with series of ostensibly significant supporting documentation, Plaintiff Higround believed and relied on Defendants GDA and Stonefort's representations as to their industry experience and assurances that the investment in the DAL would ensure their media business's success.

27. Higround further relied on GDA and Stonefort's representations that the investment would be collateralized by Stonefort.

28. In the Collateral Agreement and Joint Venture Agreement, Stonefort was described as having substantial experience in the entertainment industry and the business of media distribution and marketing, and media content distribution in particular.

29. However, upon information and belief, Stonefort was not in such a business, but only had a business in asset management and general trading. Stonefort owns 100% of Invensys

Investments LTD, established in 2008, which in turn owns 100% of Invensys Finance

Investments LLC, established in April 2019. The main business of both companies was asset

management, general trading, and finance brokering. *See* Exhibit E.

30. By May 28, 2019, Plaintiffs had transferred the sum of $5 Million USD to Defendants to be

repaid on May 24, 2022, but as of July 2023, Defendants had only returned a total of

$1,267,698.79.

31. Despite numerous demands, GDA has not repaid roughly $4.75M USD. Repayment was

guaranteed by Lee's U.S.-based company, GNG, and its U.S.-based affiliates, Genesis Group

and Neon Partners, LLC, and Neon Partners LLC (together "Neon Partners") as well as Lee

himself, who did business in his personal capacity as an affiliate, as well, separately, as by

Lee directly in his personal capacity.  But these guarantors have also failed and refused to

make payment.  The events which took place are described below in detail.

## FACTS

32. On April 15, 2019, Lee sent an email to Jung Han Woo ("Woo"), a managing partner of

BlueRun Ventures ("BRV") in Korea, to suggest making a general consulting agreement

between GDA and Higround ("Consulting Services Agreement"). BRV is an affiliated

company of Higround.  The scope of   GDA's work would be to provide general business and

investment strategies for Higround in line with and in support of Higround's growth

objectives. The compensation method would be determined periodically on a project basis

including general loans, cash remuneration and other means agreeable to both parties. *See*

Exhibit K.

33. On April 16, 2019, in an email to   Lee and others, Woo stated: "regarding a request for

drafting a consulting and loan contract for Higround Pte., which will be made after the bridge

8

loan I mentioned, Lee recommended us to make a legal document between the firm that will receive the loan and Higround Pte. I will explain it further to you orally later." *See* Exhibit K.

34. The Consulting Services Agreement was signed by both Higround and GDA. *See* Exhibit S.

35. Shortly thereafter, on May 9, 2019, Lee directed and recommended that Plaintiff HCL lend $5 Million USD to  GDA for a license deposit for the benefit of  GDA. *See* Exhibit H.   Lee promised that  GDA would buy the DAL with the money and return profits as a form of interest from the loan made by Higround.   Lee also promised that with the license, Plaintiff's business opportunities and profits would expand.

36.  Per the Term Loan Agreement's terms, GDA would borrow $5 million USD with interest at a rate of 7% per annum. The re-payment due date was May 24, 2022.  Fees due in the event of default were 10% per annum or the maximum rate allowed by law, whichever was less. GDA agreed to pay all costs incurred by Higround in collecting sums due after a default, including reasonable attorneys' fees.  Lee signed as director on behalf of GDA. *See* Exhibit A.

37. On May 11, 2019, Lee issued a guaranty agreement on the letterhead of "Neon Partners" on behalf of himself and his U.S. companies, including but not limited to GNG, Neon Partners and Genesis Group. His signature block on the guaranty agreement bears the date May 10, 2019.   He emailed the agreement to Plaintiff on May 11, 2019. *See* Exhibit I.

38. The email bore the heading "Re: Guaranty for Genesis Digital Assets Pte. Ltd." and was sent to Higround and its director, Hae-Suk Chung ("Chung"), confirming an "umbrella guaranty" on behalf of Lee's American business and himself.

39.  Lee, himself based in the U.S., having full legal authority to do so, committed GNG and its affiliates ("Guarantors"), U.S. based companies including Neon Partners and Genesis Group,

to guarantee full payment on the Term Loan Agreement and pay Higround on demand any sum which may become due.

40. The parties understood and intended that the term "affiliates" meant all the parents, sisters and subsidiaries of GNG, which were owned, operated and/or controlled by   Lee and on whose behalf he had authority to sign, including but not limited to himself, Neon Partners and Genesis Group as well as GNG itself.

41.   Lee was required to extend a personal guaranty not just as an "affiliate" of GNG but also directly. This was a condition precedent of Higround releasing funds to his companies.

42. On May 14, 2019, Higround delivered $1,500,000 USD from a bank in Singapore to GDA by transferring it to Stonefort for the benefit of GDA under GDA's instructions.

43. On May 28, 2019, Higround delivered $3,500,000 USD from a bank in Singapore to GDA by transferring it to Stonefort for the benefit of   GDA under GDA's instructions.

44. On July 31, 2019,   Lee emailed Woo stating that the goal for Plaintiff's investment in the DAL was for Higround to become a "premier leader" in (a) Korea media content creation; (b) cross-border media content creation with K-pop mixed local synergies; (c) dynamic distribution of Higround Korea's content utilizing strong local media and political relationships in Southeast Asia first and the Middle East and Europe/USA thereafter; (d) innovative utilization of blockchain technology to grow Higround's business not just in Korea, but globally (with the Global Blockchain Foundation to market Higround Korea content worldwide on emerging technology platforms). *See* Exhibit L.

45. In the same email, Lee also asked Plaintiffs not to mention the "IC Memo" to BRV, stating: "Please don't mention the 'broker-dealer and asset management firm' to BRV people. It'll ignite automatic intense, needless due diligence. The project manager may get tempted to

accuse of management negligence and potentially fraud since these are not related to Higround's business."

46. Although Chung and Woo found the email odd and felt very uncomfortable about its surreptitious appearance, Lee reassured them by stating in the email that a General Partner of Neon Partners guaranteed the amount of the Loan, and since the Loan had already been disbursed by that time, Higround followed Lee's instruction and did not share the acquired information.

47. On March 22, 2020, Defendant Lee sent proof of assets to Lynette Lim, stating that Mr. Henry Lee has the availability of private funds and assets in the amount of approximately $5,000,000 USD through Invensys Fund SCSp registered in Luxembourg and Genesis-Neon Holdings LLC registered in the UAE. *See* Exhibit Z.

48. On October 23, 2020, the parties entered into a payment agreement which modified the Term Loan Agreement and agreed to choose New York for its jurisdiction for any disputes regarding the Term Loan Agreement. *See* Exhibit G.

**A. Defendants GNG, Lee, Genesis Group, Neon partners and GNG's other affiliates guaranteed the repayment of the Loan, and   Lee guaranteed the Loan in his individual capacity.**

49. As noted above, in order to reassure Higround and avoid questions about liability and other risks from Higround, Lee emailed a written guaranty on May 11, 2019, with the heading "Re: Guaranty for Genesis Digital Assets Pte. Ltd." to Chung and Higround. The written guaranty stated, "I do hereby waive notice of default, nonpayment and notice thereof and consent to any modification or renewal of the credit agreement hereby guaranteed." *See* Exhibit I.  His use of this first-person language was intended by all the parties to convey that in addition to

extending a guaranty of the repayment of the funds as an affiliate of GNG, Lee was also extending a guaranty directly in his personal capacity, for the elimination of all doubt.

50.   Lee issued the written guaranty with his printed individual name, "Henry H. Lee," expressing both a personal guaranty and the binding of the GNG affiliates he was authorized to sign for.  Lee also wrote his U.S. passport number above his signature to further emphasize for his personal guaranty this personal guaranty.  His doing so was intended by all the parties to convey that in addition to extending a guaranty of the repayment of the funds as an affiliate of GNG, Lee was also extending a guaranty directly in his personal capacity, for the elimination of all doubt.

51.   In the May 11, 2019, guaranty, Lee stated that GNG and its affiliates ("Guarantor") were guarantying repayment. He stated that GNG's offices were located at 1250 Broadway, New York, NY 10001, the same offices held by Genesis Group, Neon Partners and Lee himself, as alleged herein, because they were all affiliates.  The guaranty was printed on the letterhead of Neon Partners. The guaranty was unconditional and continuing and irrevocable.

52.   In February 2021, a Loan Modification and Collateral Agreement ("February 2021 Loan Modification and Collateral Agreement") was expected to be executed reconfirming the liability of Guarantor. *See* Exhibit D.

53.   Under this agreement, the stated collateral for the Loan was the pledge of six million seven hundred thirty thousand (6,730,000) outstanding shares of common stock of Jules Corporation by Jonathan Chan, the founder and CEO of Jules Corporation.  Additionally in this agreement, the parties agreed to the exclusive jurisdiction of the state or federal courts located within New York County, New York for any disputes arising in connection with the

agreement. *See* Exhibit D.   GDA also designated Scott Hur, Esq. at Hur, Lash & Choe, LLP

as counsel. *See* Exhibit D.

54. Plaintiffs relied on numerous documents   Lee sent regarding the value of stocks of Jules

Corporation, the pledge of shares of Jules Corporation by Chan, and promises by   Lee that

they would soon be executed.

**B. In order to disguise the fraudulent scheme, GDA and Stonefort entered into the Loan Collateral and Joint Venture Agreements in an apparent attempt to convince Higround that they were planning to secure rights in media and film production projects, which would purportedly add value to their companies.**

55. On March 27, 2019, prior to the Term Loan Agreement, GDA and Stonefort entered into the

Loan Collateral Agreement. *See* Exhibit C.

56. In the Loan Collateral Agreement, GDA and Stonefort agreed to guarantee their respective

obligations, as specified and agreed to in the Joint Venture Agreement.  *See* Exhibit C.

57. Defendant GDA was responsible for procuring from Plaintiffs the required capital

contributions, $5,000,000 USD, for Stonefort's advising on and arranging for media content

related business opportunities in the ASEAN countries and Gulf region. *See* Exhibit C, (A),

(B); *See also* Exhibit B, 2.1.2.

58. Both parties agreed not to sell or transfer ownership of the collateral specified in the Loan

Collateral Agreement until the Loan from Higround has been fully repaid. *See* Exhibit C,

2.1.4.

59. The agreement also provided that "should GDA default on Loan, Higround shall have the

right to seize the listed collateral and resell it to recoup their lost investments." *See* Exhibit C,

2.1.5.

60.  Lee sent the Loan Collateral Agreement to Higround to emphasize the purported protection it would afford Higround.

61. However, Stonefort never provided, nor intended to provide, the collateral as specified in the Loan Collateral Agreement.

62. That same day on March 27, 2019, Defendants GDA and Stonefort also entered into the Joint Venture Agreement.  Under the Joint Venture Agreement, Stonefort was responsible for securing relevant rights (including ownership or licensing rights) in film works and/or film production projects in the ASEAN countries and Gulf region. *See* Exhibit B, 2.1.1.

63. Had this Joint Venture Agreement been carried out as agreed, Higround would have established relationships with various media companies and likely partnered with them, thereby enhancing its business and increasing the value of its company.

64. Upon information and belief, Stonefort neither secured nor tried to secure any rights in film works.

65. Also, in Re: Audit Reply email on April 5, 2022, Defendant Lee admitted that Defendant GDA and Stonefort had a Trust and Asset Agreement, which is certainly not a Loan Collateral Agreement. Defendant Lee also stated that Defendant GDA had the beneficial ownership of DAL and Stonefort had the full legal ownership of DAL through a cross-shareholder agreement. *see* Exhibit J.

66. Also, Defendant Lee stated that the use of funds breakdowns and receipt had been checked. *See* Exhibit J. However, Defendant Lee never provided anything in detail to Plaintiffs.

67. Higround later learned that from its incorporation in 2019 until April 5, 2022, GDA had been dormant. *See* Exhibit J.

14

68. Moreover, Defendants Lee and GDA collaborated with each other to frustrate Plaintiffs' efforts to obtain repayment under the Term Loan Agreement, causing a delay that led to Plaintiffs' detriment.

69. Defendants never intended to return much of the investment or the Loan.

70. However, to fend off immediate action by Plaintiffs, Defendants have returned a total of $1,267,698.79 USD in the years since the Term Loan Agreement was executed.

71. For example, on April 26, 2021, Lee sent $499,990 to Plaintiff through Hur, Lash & Choe, LLP, which was located at 600 Sylvan Ave. Ste. 109, Englewood Cliffs, New Jersey, 07632. *See* Exhibit P.

72. On May 17, 2021, Lee additionally sent $249,990 to Plaintiff through Hur, Lash & Choe, LLP. *See* Exhibit P.

73. During this time, Defendants also created and provided multiple Loan reaffirmations to Plaintiff, confirming and reconfirming the final Loan amount and interest due.

74. During this time, Defendants manipulated and provided false information to Plaintiffs by amending the Loan Term Agreement and fabricating supporting documents to induce Plaintiffs' continued reliance on the Loan and mislead Plaintiffs into believing that Defendants would return their money.

75. Relying on various representations and alleged promises that repayment was imminent, Plaintiffs continuously deferred taking action against Defendants, reduced interest and extended the maturity date.  To instill false confidence in their ability and intent to repay the Loan, Defendants provided the following to Plaintiffs:

    a. On or about February 19, 2021, Lee provided an agreement letter from Chan, the CEO of Jules Corporation in Singapore, to Plaintiffs, pledging Chan's six million seven

hundred thirty thousand (6,730,000) shares of outstanding common stock of Jules Corporation as collateral to ensure the prompt payment of the Loan under the Term Loan Agreement. *See* Exhibit D.

b. In a letter addressed to Plaintiff Higround Pte., Chan stated, "I personally own the shares being pledged as the Collateral [and] confirm my commitment to assist in the transfer of Collateral to [Higround Pte.] should it be necessary." Chan also made the following representations and "confirmation of support" for GDA:

> 1. I have an understanding with [GDA] regarding the Collateral Agreement and the contents thereof;
> 2. Jules Corporation has received necessary approvals for the listing of Jules Corporation with public equity valuation at listing of between US$80 – 100 million;
> 3. The Collateral will be transferred to [Higround Pte.] with cooperation of Jules Corporation should it be required in accordance with the Collateral Agreement; and
> 4. Borrower intends to satisfy the payment obligations related to the loan by the maturity date.

*See* Exhibit Q.

c. Chan's letter goes on further to state that "this expression of support demonstrates the strong and complimentary relationship that we have maintained with Borrower over the years."  *See* Exhibit Q.

d. Upon information and belief, Chan never intended to pledge any shares nor collateralize anything toward the Loan; rather, Chan knowingly and/or negligently allowed Lee to use Chan and Jules Corporation's names, thereby conspiring with Lee for the purpose of perpetrating fraud upon Plaintiffs.

e. Based on the February 2021 Loan Modification and Collateral Agreement, together with the letter dated February 19, 2021, Plaintiffs were convinced that the Loan was

safely secured and would be fully repaid. Thereafter, Plaintiffs succumbed to Lee's request for extension and change of the loan maturity date and loan terms.

f. On May 13, 2021, Plaintiff agreed to lower the interest and default payment to $250,000 USD and agreed to a payment within three business days.

g. On May 20 and May 27, 2021, Plaintiff again agreed to extend the payment date and change the payment terms.

h. On July 8, 2021, Lee forwarded a letter to Higround that he had purportedly received from Michael Bangash, a managing partner of West Ranch Capital Management ("WRCM"). The letter stated that Neon Partners had sought a bridge finance loan for its operational needs and executed an agreement with WRCM.  *See* Exhibit O.

i. Questionably, Michael Bangash is also a chairman of Neon Partners.

j. In the letter, WRCM agreed to the following terms:

> Put-option value of the underlying asset not to exceed ("Value"): $5.25 million.
> Activation date ("Activation Date"): 30 days from the Signature date
> Put-option valuation lock-in period ("Lock-In Period"): 60 days from the Activation Date." ("Put Option Counter-Party Agreement").
> Put Option Counter-Party Agreement was executed by Michael Bangash on July 8, 2021.

*See* Exhibit O.

k. Plaintiffs were told that once Neon Partners received a bridge finance loan from WRCM, it would be used to pay off the Loan.

l. Unsurprisingly, this never happened.  There was no bridge finance loan, and it remains to be seen if any such loan application was even made or any such agreement executed.

m. Upon information and belief, WRCM never made any bridge finance loan to Neon Partners nor paid any portion thereof to Plaintiffs.

n. Michael Bangash and WRCM knew or should have known that the Put Option Counter-Party Agreement would be relied on by the third party, Plaintiffs. Indeed, WRCM had no intention of supplying any financial support to Neon Partners.

o. On April 5, 2022, Plaintiffs and Lee agreed to alter "2. Due Date" of the Term Loan Agreement dated April 25, 2019, and to negotiate postponement the loan repayment schedule for the Term Loan Agreement and amendment dated March 7, 2020, because the pandemic had affected Defendant's business and initial plan of distributing content. *See* Exhibit R.

p. On April 8, 2022, Petra Eco Build Sdn Bhd ("Petra Eco"), a limited company incorporated in Malaysia, and GDA made a loan agreement for $5 Million USD with two years of maturity ("Petra Loan Agreement").

q. Lee was the primary principal for this transaction. As in WRCM, Defendants Lee, Petra Eco, GDA knew and agreed that any money received through this Loan Agreement would be used to pay off the Loan.

r. The Petra Loan Agreement stated that $5 Million would be funded on:

> April 15, 2022 with up to seven Singapore banking day disbursement window period thereafter pending regulatory approvals including Central Bank international wires. Disbursement shall be confirmed within 48 hours of regulatory and remittance approvals as time is of the essence.

s. Again, no funding was established in April or May of 2022.

t. On November 3, 2022, Petra Eco wrote a letter to   GDA ("November-3 Petra Eco Letter") stating the following:

> This communication affirms the definitive commitment of the [Petra Eco] to promptly fund the agreed loan of approximately 5 million dollars to [GDA]. The funding with borrower will be done promptly, within 7 banking days of closing by the Disclosing Party with a private debt facility, Islamic Development Bank or any other funding source, with commitment for best-efforts execution

and negotiation of required agreements and financing documents within a 1.5 - 2.5 weeks window.

*See* Exhibit M.

u. In reliance upon the representations set forth in this letter, on November 4, 2022, Chung, Higround's director, sent the November-3 Petra Eco Letter as an attachment to an internal company email, stating that it was a letter from Petra agreeing to provide a loan within 2 weeks. *See* Exhibit N.

v. Yet again, there was no funding of any kind from Petra Eco during that time.

76. On December 19, 2022, based on numerous loan reaffirmations and amendments to the Loan Agreement provided by  Lee, Plaintiffs sent out a "Last Overdue Account Reminder" whereby demand was made by Plaintiffs that the "loan in the amount of $4,750,000" plus interest be paid by "December 26, 2022". *See* Exhibit N.

77. On December 21, 2022, Chung sent an email to Lee to request a confidence letter or  Lee's sincere action that the Loan would be repaid. Chung requested at least a partial repayment, or at least in the alternative a bi-annual financial report from Defendants GDA, Neon Partners, or Stonefort. *See* Exhibit N.

78. Subsequently, on January 6, 2023, Plaintiff Higround sent an email to  Lee requesting information about when and how the loan would be repaid and whether any repayment progress had been made, and seeking clarification as to when Petra Eco's loan would close. Higround requested a reply by January 10, 2023. *See* Exhibit N.

79. In the same email thread, Lee emailed Plaintiffs stating, "per our discussion, GDA is in the process of working to arrange for the $4.75 million agreed outstanding repayment amount and working towards closing." *See* Exhibit N.

80. As of July 2023, Plaintiff has not received any payment against the Loan in the amount of $4.75 million from   Lee and/or   GDA and/or its affiliates, and all Defendants have been silent and non-responsive to any and all communication by Plaintiffs. Therefore, no further negotiation pertaining to the loan repayment schedule, as agreed on April 5, 2022, could be held.

**Maintenance of Business Address in New York City by Genesis Group and Neon Partners**

81.   Genesis Group and Neon Partners, at all times pertinent herein, maintained their business headquarters at 1250 Broadway, 36th Fl., New York, NY, 10001, and as shown below shared this location with GNG, their affiliate. All three companies were owned, operated and controlled by Lee.

82.   Genesis Group maintained a website at

    https://genesisgrouppartners.com/author/gengroup212/

which displayed this address prominently.  See Exhibit U attached hereto.

83.   Genesis Group maintained a Google listing which displayed this address.  See Exhibit V attached hereto.

84.   Neon Partners is represented on the same website as the joint operator with the same address.  See Exhibit W attached hereto.

85.   Neon Partners maintained a website with Genesis Group which displayed this address.  See Exhibit X attached hereto.

86.   Neon Partners maintained a Google listing which displayed this address.  See Exhibit Y attached hereto.

87.   Neon Partners letterhead was used to issue the May 11, 2019 guaranty. See Exhibit I.

88. Lee repeatedly represented to Plaintiffs that Genesis Group and Neon Partners operated their business headquarters at the 1250 Broadway address and were affiliates of GNG, as indicated herein.

**Jurisdictional Contacts by Defendants GNG, Genesis Group and Neon Partners**

89. The May 11, 2019, guaranty states that GNG is "located at 1250 Broadway, New York, NY, 10001." See Exhibit I.

90. Though created in Delaware, upon information and belief GNG did little if any business there and was immediately headquartered in New York City, sharing its address with two affiliated companies, Neon Partners and Genesis Group.

91. Operating from its New York City headquarters, GNG and its affiliated companies, Neon Partners and Genesis Group so continuously and systematically maintained their presence as to render them essentially at home in New York and sufficient to subject them to the general jurisdiction of the courts of the State of New York, among other things, maintaining their principal place of business in New York.

92. Further, GNG and its affiliated companies, Neon Partners and Genesis Group carried out actions described herein while operating out of their New York City headquarters, transacting business within the state and entering into contracts to supply goods or services in the state, including but not limited to specific transactions from which the claims stated herein arose, and it used this headquarters address to establish themselves with Plaintiffs as a reputable New York City business affiliated with other such businesses, thus subjecting them to the specific jurisdiction of the courts of the State of New York.

**FIRST CAUSE OF ACTION**
**a. Breach of Contract by Plaintiff Higround Pte.**

21

**as Against GDA**

93. Plaintiffs repeat and re-allege the foregoing allegations in the preceding paragraphs as if fully set forth herein.

94. Defendant entered into contracts with Plaintiffs for loans and the guaranty of loans. HPL made a term loan to GDA for $5 million USD under a term loan agreement on April 25, 2019, with an initial maturity date of May 24, 2022. *See supra* ¶ 36.

95. Plaintiffs fulfilled all obligations under the contracts.

96. On May 14, 2019, Higround delivered $1,500,000 USD from a bank in Singapore to GDA by transferring it to Stonefort for the benefit of GDA under GDA's instructions. *See supra* ¶ 42.

97. On May 28, 2019, Higround delivered $3,500,000 USD from a bank in Singapore to GDA by transferring it to Stonefort for the benefit of GDA under GDA's instructions. *See supra* ¶ 43.

98. Defendants GDA and Lee violated and materially breached the terms and conditions of the contracts. They failed to use the funds intended for investment to benefit the joint business and they failed to repay the loans.

99. Defendant only returned a total of $1,267,698.79 USD in the years since the Term Loan Agreement was executed. *See supra* ¶ 70.

100. On April 5, 2022, Plaintiff and Defendant agreed to alter "2. Due Date" of the Term Loan Agreement dated April 25, 2019, and to negotiate to postpone the loan repayment schedule for the Term Loan Agreement. *See* Exhibit R.

101. However, Defendant has been silent and non-responsive to any and all communication by Plaintiff. Therefore, no further negotiation pertaining to the loan repayment schedule, as agreed on April 5, 2022, could be held. *See supra* ¶ 80.

102.    On December 19, 2022, based on numerous loan reaffirmations and amendments to the Loan Agreement, Plaintiff sent out a "Last Overdue Account Reminder" whereby demand was made by Plaintiff that the "loan in the amount of $4,750,000" plus interest be paid by "December 26, 2022". *See* Exhibit N. *See supra* ¶ 76.

103.    As of July 2023, Plaintiff has not received any payment against the Loan in the amount of $4.75 million from GDA. *See supra* ¶ 80.

104.    As a result of Defendant's breach, Plaintiff was damaged.

### b. Breach of Contract by Plaintiff Higround Pte. as Against Defendants Lee, GNG, Neon Partners and Genesis Group

105. On May 11, 2019, Lee, who was authorized to do so, signed a guaranty of the loan funds issued by Plaintiff to GDA on behalf of GNG, and on behalf of all other GNG affiliates on behalf of whom he was authorized to sign, including but not limited to Genesis Group and Neon Partners and himself, and in his personal capacity. *See supra* ¶ 49.

106. Unlike other legal documents with Plaintiffs regarding the loan, which Defendant Lee usually signed as a 'director,' in the guaranty letter, Defendant Lee put his personal passport number instead of putting the term, 'director,' and signed the guaranty in his individual capacity.

107. The guaranty stated that GNG and its affiliates agreed to guarantee in full and pay Higround Pte. on demand any sum which may become due whenever GDA shall fail to pay the same. *See supra* ¶ 49-51. The guaranty was unconditional.

108. The guaranty stated: "I do hereby waive notice of default, nonpayment and notice thereof and consent to any modification or renewal of the credit agreement hereby guaranteed." *See supra* ¶ 49.

109. Since May 17, 2021, GDA has not paid any amount as agreed. *See supra* ¶ 80.

110. Plaintiffs have duly demanded that Defendants GNG, Genesis Group, Neon Partners and Lee satisfy the obligation of GDA which they agreed in writing to guaranty. *See supra* ¶ 76-80.

111. However, Defendants GNG, Genesis Group, Neon Partners and Lee failed to pay Plaintiffs any part of the amount due.

**WHEREFORE**, Plaintiff Higround Pte.  respectfully requests that this Court enter a judgment:

    a.   declaring  that  Defendants  have  breached their agreements with Plaintiff Higround Pte.;

    b.   declaring that Defendants' breach was willful;

    c.   enjoining future violations of the agreement by Defendants;

    d.   awarding Plaintiff Higround Pte. compensatory damages;

    e.   awarding Plaintiff Higround Pte. liquidated damages;

    f.   awarding Plaintiff Higround Pte. punitive damages;

    g.   awarding Plaintiff Higround Pte. pre- and post-judgment interest;

    h.   awarding  Plaintiff  Higround Pte.  reasonable  attorneys'  fees  and  costs; and

    i.   awarding  such  other  and  further  relief  as  the  Court  deems  just  and proper.

## <u>SECOND CAUSE OF ACTION</u>
### (Fraud by All Plaintiffs against Defendants Lee and GDA)

112. Plaintiffs repeat and re-allege the foregoing allegations contained in the preceding paragraphs as if fully set forth herein.

113.     Defendant Lee had complete dominion over GDA whose capital is only $1 USD and such

domination was used to commit a fraud or wrong against Plaintiffs which resulted in

Plaintiffs' injury.

114. Defendants made material misrepresentations of fact regarding various transactions upon

which they caused Plaintiffs to rely.

115. HCL and HPL, which plead in the alternative to its breach of contract cause of action, were

both informed at various times that they were being asked to engage in a guaranteed loan

transaction with one or more persons and/or entities with whom they had a fiduciary

relationship, in other words a very low risk transaction for which they would be

compensated with a relatively modest interest rate.

116. They were also informed that their funds would be spent on compelling and legitimate

business purposes which would give rise to substantial profits and make the transaction even

less risky.

117. Neither HPL nor HCL would have committed funds to an investment transaction without the

proper representation, material and information.

118.  The specific misrepresentations they received and upon which they relied include, but are

not limited to, those set forth below.

      a.   For HPL:

119.  In the Loan Collateral Agreement, Stonefort agreed that it would provide

matching collateral as comfort. *See* Exhibit C.

120.  However, Stonefort never provided, nor intended to provide, the collateral as

specified in the Loan Collateral Agreement. *See supra* ¶ 61.

121.  In fact, in a reply email to Grant Thornton Daejoo, auditors in Korea, on April 5, 2022, Defendant Lee admitted that the DAL was owned by Defendant GDA and Stonefort under a trust and asset agreement that Stonefort and Defendant GDA made. *See* Exhibit J. The term, 'Loan Collateral Agreement,' was intentionally deceptively made up by Defendant Lee to induce Plaintiffs to have a false sense of security.

122.  Also, in the Joint Venture Agreement, Stonefort was mentioned as having experience in the entertainment industry and the business of media distribution and marketing and, in particular, media content distribution. *See supra* ¶ 28.

123.  However, upon information and belief, Stonefort was not in such a business, but in the businesses of asset management and general trading. *See supra* ¶ 29.

124.  Also, in the Collateral Agreement and Joint Venture Agreement, Lee and Stonefort agreed that they would seek film production and/or distribution opportunities for Plaintiff in ASEAN and the Middle East. However, this never happened. *See supra* ¶ 24-25.

        b. <u>For HCL:</u>

125.  In his email to Woo on April 15, 2019, Lee stated that the compensation method would be determined periodically on a project-basis, including the general loan. *See* Exhibit K. Also, per the Term Loan Agreement's terms dated April 25, 2019, GDA would borrow $5 million USD with interest at a rate of 7% per annum. *See* Exhibit A. However, Defendants Lee and GDA never paid the entire loan principal amount plus interests as agreed. *See supra* ¶ 76, 80.

126.  Defendant Lee never stated that Plaintiffs would lose money from Plaintiffs' investment in the DAL. Defendant never represented that Plaintiffs' investment in the DAL would be very risky and therefore, Plaintiffs would end up with a huge loss.

127. Also, the term, DAL, was a fictitious term made up by defendant Lee to defraud Plaintiff to make them believe they would invest in something valuable.

128. Defendants intended to induce Higround to rely upon these misrepresentations, and Higround did rely upon them. *See* Exhibits K, L.

129. In reliance on these misrepresentations, Plaintiffs expended a significant sum of $5,000,000 USD. *See supra* ¶ 42-43.

130. Defendants returned only $1,267,698.79 USD to present, and Plaintiff has been damaged as a result of these misrepresentations, which were made willfully and maliciously. *See supra* ¶ 70.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter a judgment:

      a. declaring that Defendants intentionally defrauded Plaintiff;

      b. declaring that Defendants' fraud was willful;

      c. enjoining future acts of fraud by Defendants;

      d. awarding Plaintiffs compensatory damages;

      e. awarding Plaintiffs liquidated damages;

      f. awarding Plaintiffs punitive damages;

      g. awarding Plaintiffs pre- and post-judgment interest;

      h. awarding Plaintiffs reasonable attorneys' fees and costs; and

      i. awarding such other and further relief as the Court deems just and proper.

## THIRD CAUSE OF ACTION
### (Rescission for All Plaintiffs against Defendants Lee and GDA)

131. Plaintiffs repeat and re-allege the foregoing allegations contained the preceding

    paragraphs as if fully set forth herein.

132. Defendants misrepresented, concealed or didn't disclose a material fact that the Term Loan

    Agreement was in fact, a risky investment in the DAL.  *See supra* ¶ 17.

133. Defendants intended to deceive Plaintiffs.

134. An injury resulted from justifiable reliance by Plaintiffs because Defendants returned only

    $1,267,698.79 USD, causing injury in the amount of $3,732,301.21 USD. *See supra* ¶ 70.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter a judgment:

      a.  declaring that Defendants intentionally converted property belonging to

         Plaintiffs;

      b.  declaring that Defendants' conversion was willful;

      c.  enjoining future acts of conversion by Defendants;

      d.  awarding Plaintiffs compensatory damages;

      e.  awarding Plaintiffs liquidated damages;

      f.  awarding Plaintiffs punitive damages;

      g.  awarding Plaintiffs pre- and post-judgment interest;

      h.  awarding Plaintiffs reasonable attorneys' fees and costs; and

      i.  awarding such other and further relief as the Court deems just and proper.

## FOURTH CAUSE OF ACTION
### (Conspiracy for All Plaintiffs against All Defendants)

135. Plaintiffs repeat and re-allege the foregoing allegations contained in the preceding

    paragraphs as if fully set forth herein.

136. Defendants agreed between themselves to take actions in furtherance of fraud and

conversion against Plaintiffs.

137.  Defendants took specific actions, to wit, fraud and conversion, in furtherance of their

Agreement to inflict a wrong against Plaintiffs.

138.  Plaintiffs were damaged as a result of this conspiracy between the Defendants.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter a judgment:

      a.   declaring  that  Defendants  conspired to commit torts against Plaintiff;

      b.   declaring that Defendants' conspiracy was willful;

      c.   enjoining future acts of conspiracy by Defendants;

      d.   awarding Plaintiffs compensatory damages;

      e.   awarding Plaintiffs liquidated damages;

      f.   awarding Plaintiffs punitive damages;

      g.   awarding Plaintiffs pre- and post-judgment interest;

      h.   awarding  Plaintiffs  reasonable  attorneys'  fees  and  costs;  and

      i.   awarding  such  other  and  further  relief  as  the  Court  deems  just  and

         proper.

**FIFTH CAUSE OF ACTION**
**(Accounting for All Plaintiffs against Lee and GDA)**

139.  Plaintiffs repeat and re-allege the foregoing allegations contained in the preceding

paragraphs as if fully set forth herein.

140.  Defendants have sole and exclusive control over business records relating to the business

activity described herein.

141.  Plaintiffs cannot determine the full extent of their damages without access to the books and

records of the defendants.

142.  Therefore, Plaintiffs seek a court-ordered accounting of such books and records as they

pertain to the marketing and sales of the goods at issue herein.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter a judgment:

    a.   declaring that Defendants have sole and exclusive control over important records relating to Plaintiffs' business operations;

    b.   directing the appointment of an auditor who shall provide an accounting of such records to Plaintiffs;

    c.   awarding Plaintiffs reasonable attorneys' fees and costs; and

    d.   awarding such other and further relief as the Court deems just and proper.

## SIXTH CAUSE OF ACTION
### (Breach of Fiduciary Duty and Duty of Loyalty for All Plaintiffs against Defendants Lee and GDA)

143.   Plaintiffs repeat and re-allege the foregoing allegations contained in the preceding paragraphs as if fully set forth herein.

144.   Defendants stood in a position of trust vis-à-vis Plaintiffs in regard to the actions complained of herein. Under the Consulting Services Agreement, Defendant Lee was under the duty to give advice for the benefit of Plaintiffs upon investment matters within the scope of the relation. *See supra* ¶ 32. Defendant Lee, as a financial advisor, represented Plaintiffs on a discretionary basis, with authority to manage Plaintiffs' investment accounts and bind plaintiffs to any deal without the latter's specific authorization.

145.   Defendant had superior knowledge of the investment product involved here, the DAL, and it created a fiduciary relationship because Plaintiffs are not highly sophisticated business entities regarding the DAL. Also, between Defendant Lee and Plaintiffs, a higher level of trust than normally present in the marketplace in arm's length business transactions existed.

30

146.  Defendant Lee owed Plaintiffs a fiduciary duty and an obligation to act in their best interests as described herein. Plaintiffs transferred $5 Million USD to Stonefort under Defendant Lee's instructions for investment in the DAL. *See supra* ¶¶ 42–43.

147.  Defendant committed misconduct by alleging that through Plaintiffs' investment in the DAL under the Term Loan Agreement, Plaintiffs would recoup periodical interests plus the principal. *See supra* ¶¶ 35–36. However, Defendants only returned a total of $1,267,698.79 USD, causing injury in the amount of $ 3,732,301.21. *See supra* ¶ 70. Also, Defendant alleged that Plaintiffs would get a chance for media content related business opportunities in ASEAN and the Middle East. *See supra* ¶20. However, this never happened, either. *See supra* ¶¶ 21–22.

148.  On July 31, 2019, in the email, Defendant Lee stated that please don't mention the Singapore- Swiss based 'broker-dealer and asset management firm' to BRV people. *See* Exhibit L. On March 22, 2020, Defendant Lee sent proof of assets to Lynette Lim, confirming that he had approximately $5,000,000 USD through Invensys Fund SCSp registered in Luxembourg and Genesis-Neon Holdings LLC registered in UAE. *See* Exhibit Z; *See supra* ¶ 47.

149.  Plaintiffs never requested Defendant Lee to transfer money to either Swiss or Luxembourg.

150.  Plaintiffs were damaged as a result of Defendant's self-dealing.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter a judgment:

      a.   declaring that Defendants intentionally breached their fiduciary obligations to Plaintiffs and their duties of loyalty to Plaintiffs;

      b.   declaring that Defendants' actions were willful;

      c.   enjoining future acts of breach of fiduciary duty by Defendants;

      d.   awarding Plaintiffs compensatory damages;

      e.   awarding Plaintiffs liquidated damages;

      f.   awarding Plaintiffs punitive damages;

g.   awarding Plaintiffs pre- and post-judgment interest;

h.   awarding Plaintiffs reasonable attorneys' fees and costs; and

i.   awarding such other and further relief as the Court deems just and proper.

## SEVENTH CAUSE OF ACTION
### Alternative to First Cause of Action, Quantum Meruit, Unjust Enrichment and Constructive Trust for HPL as Against Defendants Lee and GDA

a.   <u>Quantum Meruit and Unjust Enrichment</u>

151.  Plaintiffs repeat and re-allege the foregoing allegations contained in the preceding paragraphs as if fully set forth herein.

152.  Defendants obtained property belonging to Plaintiffs, $5 Million, and earned income, without paying proper compensation to Plaintiffs. *See supra* ¶ 42-43.

153.  Defendants reaped profits from the wrongful disposition of Plaintiffs' property which were not paid to or shared with Plaintiffs. Defendants only returned a total of $1,267,698.79 USD, causing injury in the amount of $ 3,732,301.21. *See supra* ¶ 70.

154.  It is against equity and good conscience to permit Defendant to retain what should be recovered.

b.   <u>Constructive Trust</u>

155.  There was a confidential or fiduciary relationship between Plaintiffs and Defendants.

156.  Defendants Lee and GDA promised that they would return interests plus the principal.

157.  Plaintiffs sent $5Million USD to Defendants in reliance on that promise; and
*See supra* ¶ 42-43.

158.  Defendants only returned a total of $1,267,698.79 USD in the years and therefore, Defendants were unjustly enriched. *See supra* ¶ 70.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter a judgment:

a.  declaring that Defendants received financial benefits from Plaintiffs to which they were not entitled;

b.  declaring that Defendants' actions were willful;

c.  enjoining future receipts of benefits by Defendants;

d.  awarding Plaintiffs compensatory damages;

e.  awarding Plaintiffs liquidated damages;

f.  awarding Plaintiffs punitive damages;

g.  awarding Plaintiffs pre- and post-judgment interest;

h.  awarding Plaintiffs reasonable attorneys' fees and costs; and

i.  awarding such other and further relief as the Court deems just and proper.

## EIGHTH CAUSE OF ACTION

**Violation of the Securities Exchange Act 10(b), 20(a), SEC Rule 10b-5 for All Plaintiffs as Against Defendants Lee and GDA**

159.  Plaintiffs repeat and re-allege the foregoing allegations contained the preceding paragraphs as if fully set forth herein.

160.  Section 10(b) of the Exchange Act makes it unlawful "to use or employ, in connection with the purchase or sale of any security ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78j(b).

161.  The Term Loan Agreement for the DAL was an investment contract, and therefore a security, within the meaning of the Securities and Exchange Act, because it provided for the investment of money in a common enterprise with a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others.

33

162.  Under Lee's direction, HCL created HPL under the relevant laws of Singapore to facilitate a nominal transaction for investment in the DAL. *See supra* ¶ 16.

163. For the nominal transaction, Defendants Lee also created GDA in Singapore and GDA is a shell company that has been used as a vehicle for Defendant Lee's fraud. *See supra* ¶ 15.

164.  Plaintiffs invested $5,000,000 in the DAL under  Lee's direction, through which it reasonably expected to earn profits in the form of periodic interest payments. *See supra* ¶ 16.

165.  In entering the Term Loan Agreement, Plaintiffs relied on the managerial and entrepreneurial efforts of Lee, Stonefort, and their affiliates to manage the digital assets and to exercise project proposals that would generate profits for Plaintiffs without Plaintiffs' prior approval.

166. Plaintiffs' expectation was strengthened by brochures and explanations that Lee sent via email. *See* Exhibits K, F, L.

167.  Because Defendants held themselves out as experts in the blockchain and financial management and technology, Plaintiffs relied on their purported expertise.

168.  Defendants made numerous materially false and misleading statements via emails in connection with and as inducement for Plaintiffs' purchase of a security under the Term Loan Agreement.  *See* Exhibits K and L.

169.  On April 25, 2019, Lee falsely promised that GDA would buy the DAL with Plaintiffs' money and return profits as a form of interest under the Term Loan Agreement and Consulting Services Agreement discussed on April 15, 2019. *See* Exhibits A, H, K, S; *See supra* ¶ 34, 36. Even if GDA did purchase the DAL with the funds transferred by Plaintiffs, Lee never returned profits in the form of interest as he promised. *See* Exhibit J.

170.  Also on April 25, 2019, Defendants Lee and GDA falsely represented under the Term Loan Agreement, that the principal, $5,000,000, would be repaid at maturity and that Plaintiff Higround Pte. would earn periodic interest at a rate of 7% per annum. *See* Exhibit A. This never happened because, as stated above,   Lee and GDA failed to even repay the full principal. *See supra* ¶ 80.

171. In fact, on March 27, 2019, in the Loan Collateral Agreement with Stonefort, Defendant Lee used the term, "the required capital contributions" in the amount of $5,000,000 USD. *See supra* ¶ 57; *See* Exhibit C, (A), (B); *See also* Exhibit B, 2.1.2.

172.  Instead of using the term, "the required capital contributions," through using the disguised term, "the Term Loan Agreement," Defendants gave Plaintiffs a false sense of security and intended to induce Plaintiff Higround Ltd. to rely upon these misrepresentations. *See* Exhibit A.

173.   GDA had no intention of fulfilling its material obligations under the Term Loan Agreement at the time it was entered into, as evidenced by the following:

    a.   GDA had been dormant since its incorporation. *See supra* ¶ 67.

    b.  On July 31, 2019, Lee sent an email to Woo asking him not to mention the "IC Memo" or "broker-dealer and asset management firm" to BRV to avoid "intense, needless due diligence" as well as accusations of negligence and/or fraud. *See supra* ¶ 45.

    c.  In the same email, Lee stated that "we should try not to focus on [the] 'guarantee' to BRV people (KY/PM) since they may use deal aspects to make life hard for us …. Let's not give too much information to [the Project Manager]." *See* Exhibit L.

    d.  On June 12, 2023, Lee sent a brochure of Neon Partners and its affiliates, stating that they were specialists and representing its address as 1250 Broadway, New

York, NY 10001. *See* Exhibit F. In fact, Genesis-Neon Group, including Neon Partners, does not even have its own physical office.

    e.    Lee continuously stated in his emails that he would return the amount of Plaintiffs' initial investment plus interests through other funding sources. For example, in February 2021, Lee promised to provide stock in Jules Corporation as a pledge. In April 2022, Lee promised that he would be able to secure necessary funding from Petra Eco. However, Lee's promises were never performed, and GDA did not return a substantial portion of the Loan. *See supra* ¶ 75.

    f.  In January 2022, after Plaintiffs finally demanded return of the money, Lee falsely stated that GDA was in the process of arranging for the return of the $4.75 million outstanding balance. *See supra* ¶ 79.

    g.  In April 2022, Plaintiffs and Defendants Lee and GDA agreed to alter the "Due Date" of the Term Loan Agreement and to negotiate to postpone the loan repayment schedule for the Term Loan Agreement. *See* Exhibit R. Since that time, however, all Defendants have been silent and non-responsive to any type of Plaintiffs' communications, precluding any further negotiation for the repayment schedule. *See supra* ¶ 80.

174. Each of the above statements were material because they impacted the likelihood that the contemplated loan would be repaid, such that a reasonable investor would have considered them important.

175. Plaintiff would not have agreed to purchase the security described in the Term Loan Agreement absent Defendants' false and misleading statements.

176. In reliance on this purported guarantee, Plaintiff transferred the funds to Stonefort under GDA's instructions. *See supra* ¶ 42-43.

177. Defendants Lee and GDA breached their fiduciary duties in connection with the sale of securities by failing to repay Plaintiffs and by making material misrepresentations in furtherance of their fraudulent scheme.

178. Even if Higround trusted Lee to make transactions on its behalf without prior approval, Lee never disclosed to Plaintiffs details of any of these purported transactions, despite Plaintiffs' subsequent demands for information. *See* Exhibit N; *See supra* ¶ 76-80.

179. Also, even if Defendant Lee stated that the use of funds breakdowns and receipt had been checked, Defendant Lee never provided anything in detail to Plaintiffs. *See supra* ¶ 66; *see also* Exhibit J.

180. The false and misleading statements were material due to the substantial likelihood that despite Defendants' representations, the Term Loan Agreement was not intended to be a loan with an anticipated maturity date, but an investment that ran the risk of total loss. *See* Exhibit L.

181. The false and misleading statements were also material because they pertained to Defendants' management of digital assets and in fact specified digital asset types that a reasonable investor would view as having significant value, such as Ethereum and Hyperledge.

182. Defendants' false representations that some of these affiliated companies were located in New York, an expensive metropolitan area, when the companies did not even have their own physical offices, were individually and collectively material; Plaintiffs would not have

transacted business with them had they been aware of this. *See* Exhibit F.

183. Even if Defendant's brochure mentioned that its median annualized returns were approximately 25% and none of its nine investments had lost money, Defendant Lee has never returned profits since October 2021 to Plaintiff, which was individually and collectively material; Plaintiffs would not have transacted business with them had they been aware of this. *See* Exhibit F.

184. Lee only provided a company brochure of Neon Partners, an incorporation certificate of Invensys Investments Ltd., a memorandum of association of Invensys Finance Investments LLC, a commercial license of Invensys Finance Investments LLC, and a memorandum of association of Invensys Investments Ltd., an affiliate of Stonefort. *See* Exhibits E, F.

185. On April 5, 2022, without providing any detailed transaction information, Lee claimed that the book value of the license was $5,000,000 USD yet failed to provide any relevant information, instead offering comparisons with other kinds of digital assets and markets. *See* Exhibit J.

186. On March 22, 2020, Defendant Lee sent proof of assets to Lynette Lim, confirming that he had approximately $5,000,000 USD through Invensys Fund SCSp registered in Luxembourg and Genesis-Neon Holdings LLC registered in UAE. *See* Exhibit Z.

187. Relying on Defendants' material false statements, including a promise to return profits, Plaintiffs transferred $5 million USD to Defendants, only $1,267,698.79 USD of which was repaid. As a result, Defendants' fraudulent scheme caused injury to Plaintiffs. *See supra* ¶ 70.

188. Defendants Lee and GDA were primary violators under the Securities Exchange Act of

1934 because  GDA is a shell company that was used as a vehicle for Lee's fraud.

189. The transaction was "domestic" within the meaning of the Securities Exchange Act of

1934 because the parties incurred irrevocable liability in carrying out the transaction within

the United States.

190. Furthermore, the parties agreed on October 23, 2020, to the exclusive jurisdiction of the

state or federal courts located within New York County, New York for any disputes arising

in connection with the agreement. *See* Exhibit G.

191.  Lee, a US citizen, repeatedly communicated with Plaintiffs and BRV, a US major

investor, about the investment. Even if Plaintiff transferred money from a bank in

Singapore, Plaintiffs' wire transfers were carried out under BRV's control and direction

which in turn was directed by Lee.

192.  Lee directed that Higround transfer $5 million USD to Stonefort for the benefit of GDA, a

shell company. *See* Exhibit H. All communications regarding the wire transfer were sent to  Lee

in New York.

193. On April 26, 2021, Lee sent $499,990 to Plaintiffs through Hur, Lash & Choe, LLP. *See*

Exhibit P.

194. On May 17, 2021, Lee sent an additional $249,990 to Plaintiffs, again through Hur, Lash &

Choe, LLP. *See* Exhibit P.

195. In an email to Chung on December 15, 2020, Hur, Lash & Choe, LLP claimed to be

GDA's attorneys. *See* Exhibit T.

196. By reason of the foregoing, Lee and GDA, acting with Stonefort, individually and in

concert, violated Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5

thereunder, 17 C.F.R. § 240.10b-5, Section 20(a) of the Securities Exchange Act of 1934, 15

U.S.C. §78t(a).

   **WHEREFORE**, Plaintiffs respectfully request that this Court enter a judgment:

    a.  awarding Plaintiffs out-of-pocket loss, the difference between price paid and actual value at the time of Plaintiffs' purchase;

    b.  awarding Plaintiffs actual damages;

    c.  ordering the Defendants, jointly and severally, to disgorge, with prejudgment interest, all ill-gotten gains derived from the violations;

    d.  permanently restraining and enjoining Defendants from violating Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 17 C.F.R. § 240.10b-5 thereunder;

    e.  awarding Plaintiffs consequential damages, including lost dividends, brokerage fees, and taxes;

    f.  awarding Plaintiffs rescissory measure of damages, including the amount paid plus interest and other expenses attributable to Defendants' fraud;

    g.  awarding Plaintiffs restitution of the securities;

    h.  awarding Plaintiffs reasonable attorneys' fees and costs; and

    i.  awarding such other and further relief as the Court deems just and proper.

## <u>NINTH CAUSE OF ACTION</u>

### Piercing the corporate veil- Alter ego

197. Defendant Lee exercised complete dominion of Defendant corporations in respect to the loan transaction or all Defendant entities operated as a single economic entity.

198. Defendant Lee disregarded corporate formalities for Defendant GDA. As a dormant company, Defendant Lee stated that Defendant GDA didn't have to provide a financial statement. *See* Exhibit J.

199. There are no separate officers and shareholders for Defendant GDA because Defendant Lee was the sole shareholder and officer and/or director except a nominal regional officer.

200. Defendant GDA whose capital is only $1 USD is not adequately capitalized and is not solvent. Defendant Lee knowingly undercapitalized this entity to be able to avoid obligations that would arise from the Term Loan Agreement.

201. Except Defendant GDA, all other Defendant entities share common office space at the same location, 1250 Broadway, New York, NY, 10001, the same phone number, 646-475-8080, and the same owners, officers, and/or directors, Defendant Lee. *See* Exhibit F.

202. Also, the repayment of Plaintiffs' loan borrowed by Defendant GDA was guaranteed by all other Defendant entities. *See* Exhibit I.

203. Also, Defendant GDA simply functioned as a façade for Defendant Lee to make the Term Loan Agreement to receive money from Plaintiffs.

204. Defendant Lee's dominion or unitary operation was used to commit fraud or wrong against Plaintiffs that resulted in Plaintiffs' injuries, loss of most of the loan principal plus profits. Defendant Lee's all entities were used to engage in conduct that was 'inequitable.'

**WHEREFORE**, Plaintiffs respectfully requests that this Court enter a judgment:

> a.   declaring that Defendants have breached their agreements with Plaintiffs;

b.   declaring that Defendants' breach was willful;

c.   enjoining future violations of the agreement by Defendants;

d.   awarding Plaintiffs compensatory damages;

e.   awarding Plaintiffs liquidated damages;

f.   awarding Plaintiffs punitive damages;

g.   awarding Plaintiffs pre- and post-judgment interest;

h.   awarding Plaintiffs reasonable attorneys' fees and costs; and

i.   awarding such other and further relief as the Court deems just and proper.

## TENTH CAUSE OF ACTION

### Defendant Lee's personal liability as a partner

205. Under New York law, general partners are personally and individually liable for all obligations of the partnership.

206. The brochure Defendant Lee sent to Plaintiffs shows that Defendant Lee was a senior managing partner of Neon Partners[,] LLC. *See* Exhibit F.

207. On May 11, 2019, in the business letterhead of Neon Partners, Neon Partners[,] LLC guaranteed Defendant GDA's repayment of Plaintiffs' loan. *See* Exhibit I.

208. Defendant GDA failed to repay money to Plaintiffs.

209. As a general partner, Defendant Lee is personally and individually liable for Plaintiffs' loan repayment.

**WHEREFORE**, Plaintiffs respectfully requests that this Court enter a judgment:

a.   declaring that Defendants have breached their agreements with Plaintiffs;

b.  declaring that Defendants' breach was willful;

c.  enjoining future violations of the agreement by Defendants;

d.  awarding Plaintiffs compensatory damages;

e.  awarding Plaintiffs liquidated damages;

f.  awarding Plaintiffs punitive damages;

g.  awarding Plaintiffs pre- and post-judgment interest;

h.  awarding Plaintiffs reasonable attorneys' fees and costs; and

i.  awarding such other and further relief as the Court deems just and
    proper.

Dated: February 12, 2024

**KIM & BAE, P.C.**
Attorneys for Plaintiffs

By:  _____ /s/ *Bong June Kim* _____
            Bong June Kim, Esq. (BK-6989)

**<u>JURY DEMAND</u>**

Plaintiffs demand a trial by jury.

Dated: February 12, 2024

                                            **KIM & BAE, P.C.**
                                            Attorneys for Plaintiffs

By:                */s/ Bong June Kim*
                               Bong June Kim, Esq. (BK-6989)