## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HIGROUND CO., LTD.; and HIGROUND PTE LTD., | Civil Action  No.: 1:23-cv-08618-JSR |
| *Plaintiffs*, | |
| *v.* | |
| HENRY HAN-WOONG LEE; GENESIS DIGITAL ASSETS PTE, LTD.; GENESIS GROUP PARTNERS, LLC; NEON PARTNERS, LLC; STONEFORT CONSULTATNTS FZC; PETRO ECO BUILD SDN BHD; WEST RANCH CAPITAL MANAGEMENT; JULES CORPORATION; JONATHAN CHAN; NEON PARTNERS, LLC; GENESIS-NEON GROUP, LLC; | **DEFENDANT HENRY HAN-WOONG LEE's FIRST SET OF INTERROGATORIES TO PLAINTIFF HIGROUND CO., LTD.** |
| *Defendants*. | |

## DEFENDANT HENRY HAN-WOONG LEE'S
## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

## ORAL ARGUMENT REQUESTED

On the brief:   Sean S. Kwak, Esq.
Kim, Lim & Partners
460 Bergen Blvd., Suite 305
Palisades Park, New Jersey 07650
(t): 201.585.7400
(f): 201.585.7422
seankwak@klplawyers.com
*Attorneys for Defendant Henry Han-Woong Lee*

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................ iii

I.     PRELIMINARY STATEMENT ......................................................................... 1

II.    PROCEDURAL HISTORY ................................................................................ 1

III.   SUMMARY OF ALLEGED FACTS ................................................................. 2

IV.    LEGAL ARGUMENT ........................................................................................ 4

   A.  Standard of Review ......................................................................................... 4

   B.  Plaintiff Fails to State a Claim Under the First Cause of Action (Part (b)) for Breach of
       Contract Against Defendant Henry Lee. .......................................................... 5

      i.   Plaintiffs Fail To Allege An Enforceable Contract Between HPL and Defendant
           Henry Lee. ................................................................................................ 5
      ii.  Plaintiffs Fail To Allege An Enforceable Contract of Guaranty Between HPL and
           Defendant Henry Lee. ............................................................................... 5

   C.  Plaintiffs Fail to State a Claim Under the Second Cause of Action for Fraud. ................. 7

   D.  Plaintiffs Fail to State a Claim Under the Third Cause of Action for Rescission. ............ 9

   E.  Plaintiffs Fail to State a Claim Under the Sixth Cause of Action. .................................. 10

      i.   Defendant Lee Did/Does Not Owe a Fiduciary Duty and/or Duty of Loyalty to
           Plaintiffs. ................................................................................................ 10
      ii.  Tort Claims for Breach of Fiduciary Duty and Duty of Loyalty are Barred under the
           Economic loss doctrine. .......................................................................... 11

   F.  Plaintiffs Fail to State a Claim Under the Seventh Cause of Action. .............................. 12

      i.    Quasi-Contract Claims for Unjust Enrichment and Quantum Meruit are Barred By the
            Existence of a Valid and Enforceable Written Contract. ................................ 12
      ii.   Defendant Henry Lee Has Not Been "Unjustly Enriched." ........................... 13
      iii.  Plaintiffs Did Not Perform Any Services. .................................................. 14

   G.  Plaintiff Fails to State a Claim Under the Eighth Cause of Action. ................................ 14

      i.    The Securities Exchange Act Does Not Govern the Alleged Transaction(s) Pursuant to
            the Term Loan Agreement. ...................................................................... 14
      ii.   There was No Exchange of "Security" Among the Parties. .......................... 16
      iii.  The Fourth Prong Under the Howey Test is Not Satisfied. .......................... 17
      iv.   The Third Prong Under the Howey Test is Not Satisfied. ............................ 19

   H.  Plaintiffs Fail to State a Claim Under the Fifth Cause of Action for Accounting. ........... 20

   I.  Plaintiffs Fail to State a Claim Under the Fourth Cause of Action for Civil Conspiracy. 20

   J.  Plaintiffs Fail to State a Claim Under the Ninth and Tenth Causes of Action for "Piercing
       the Corporate Veil" and "Personal Liability as a Partner." ................................... 21

V.    CONCLUSION ................................................................................................ 23

## TABLE OF AUTHORITIES

**Cases**

34-06 73, LLC v. Seneca Ins. Co., 39 N.Y.3d 44 (2022) ............................................................... 5

Abacus Fed. Sav. Bank v. Lim, 905 N.Y.S.2d 585 (App. Div. 2010).......................................... 20

Alunni v. Dev. Res. Grp., LLC, 445 Fed. Appx. 288 (11th Cir. 2011) .................................. 18, 19

Archstone Dev. LLC v. Renval Constr. LLC, 67 N.Y.S.3d 7 (App. Div. 1st Dep't 2017)............ 8

Ashcroft v. Iqbal, 556 U.S. 662 (2009).......................................................................................... 4

Balta v. Ayco Co., 626 F.Supp.2d 347, 360 (W.D.N.Y. 2009) .................................................... 10

Barbara v. MarineMax, Inc., 12-cv-0368, 2012 WL 6025604 (E.D.N.Y. Dec. 4, 2012)............. 10

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) ......................................................................... 4

Berman v. Sugo LLC, 580 F. Supp. 2d 191, 202 (S.D.N.Y. 2008) ................................................ 5

Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.,
448 F.3d 573 (2d Cir. 2006).......................................................................................................... 13

Cameron v. Outdoor Resorts of America, Inc., 608 F.2d 187 (5th Cir. 1979) ............................ 19

Citibank, N.A. v. Franco, 2011 WL 6961404 (S.D.N.Y. Dec. 29, 2011)...................................... 6

Cortlandt St. Recovery Corp. v. Bonderman, 96 N.E.3d 191, 203 (N.Y. 2018) ......................... 21

Deerfield Commun. v. Chesebrough–Pond's, 68 N.Y.2d 954, 956 (1986) ................................... 8

DeLuca v AccessIT Group, Inc., 695 F Supp 2d 54 (S.D.N.Y. 2010) ......................................... 16

Department of Economic Development v. Arthur Andersen & Co. (U.S.A.),
683 F.Supp. 1463 (S.D.N.Y.1988) ............................................................................................... 16

Eberhardt v. Waters, 901 F.2d 1578 (11th Cir. 1990) ................................................................. 19

EEOC v. Staten Island Sav. Bank, 207 F.3d 144 (2d Cir. 2000)................................................... 4

Eurycleia Partners, LP v. Seward & Kissel, LLP, 910 N.E.2d 976 (N.Y. 2009) .......................... 7

Fuji Photo Film U.S.A., Inc., 669 F. Supp. 2d 405 (S.D.N.Y. 2009) ............................................ 5

Fund of Funds, Ltd. v. Arthur Andersen & Co., 545 F. Supp. 1314 (S.D.N.Y. 1982)........... 18, 19

GBJ Corp. v. Sequa Corp., 804 F. Supp. 564 (S.D.N.Y. 1992).................................................... 16

Grund v. Delaware Charter Guarantee & Tr. Co., 788 F. Supp. 2d 226, 246 (S.D.N.Y. 2011)... 12

Harris v. City of New York, 186 F.3d 243 (2d Cir. 1999).............................................................. 4

Jacobs v. Lewis, 689 N.Y.S.2d 468 (App. Div. 1st Dep't 1999)................................................... 8

KLS Diversified Master Fund, L.P. v McDevitt, 507 F Supp 3d 508 (S.D.N.Y. 2020),
aff'd, 21-1263, 2022 WL 2759055 (2d Cir. July 13, 2022)........................................................... 6

Lama Holding Co. v. Smith Barney, 88 N.Y.2d 413 (1996) .......................................................... 7

Learning Annex Holdings, LLC v. Whitney Educ. Grp., Inc., 765 F. Supp. 2d 403, 413
(S.D.N.Y. 2011) .......................................................................................................... 13, 14

Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A,
244 F.R.D. 204, 220 (S.D.N.Y. 2007) ................................................................................ 12

Marine Bank v. Weaver, 455 U.S. 551 (1982) ......................................................... 16, 17

Morris v. Department of Taxation, 82 N.Y.2d 135, 140 (1993) .................................... 21

Munno v. Town of Orangetown, 391 F. Supp. 2d 263 (S.D.N.Y. 2005) .......................... 4

Myun-Uk Choi v. Tower Research Capital LLC, 890 F.3d 60 (2d Cir. 2018) ............... 13

N. Shipping Funds I, LLC v. Icon Capital Corp., 921 F. Supp. 2d 94 (S.D.N.Y. 2013) ............. 10

Nat'l Union Fire Ins. Co. of Pittsburg v. Beelman Truck Co.,
203 F. Supp. 3d 312 (S.D.N.Y. 2016) .................................................................................. 6

Page v. Krekey, 137 N.Y. 307 (1893) .................................................................................. 5

Ross v. Louise Wise Servs., Inc., 8 N.Y.3d 478 (2007) ...................................................... 7

Rudman v. Cowles Commc'ns, Inc., 280 N.E.2d 867 (N.Y. 1972) ..................................... 9

S. E. C. v. Aqua-Sonic Products Corp., 687 F.2d 577, 584 (2d Cir. 1982) ..................... 18

S.E.C. v. W. J. Howey Co., 328 U.S. 293 (1946) ............................................................. 16

Stewart v. Jackson & Nash, 976 F.2d 86 (2d Cir. 1992) .................................................... 8

U.S. v. Koenig, 388 F.Supp. 670 (S.D.N.Y. 1974) .......................................................... 15

Ullman v. Hillyer, 965 N.Y.S.2d 711 (App. Div. 1st Dep't 2013) .................................... 8

United States v. Carmen, 577 F.2d 556 (9th Cir. 1978) ................................................... 19

Wesselman v. Engel Co., 309 N.Y. 27, 30 (1955) .............................................................. 5

White Rose Food v. Saleh, 99 N.Y.2d 589 (2003) .............................................................. 5

World Wrestling Fed'n. Entertainment v. Bozell, 142 F.Supp.2d 514 (S.D.N.Y. 2001) ............. 20

Yablon v. Stern, 161 A.D.3d 594 (N.Y. App. Div. 1st Dep't 2018) ................................... 8

**Statutes**

17 C.F.R. § 230.405 ............................................................................................................. 6

N.Y. LLC § 609 ................................................................................................................. 22

N.Y. PTR § 26 ................................................................................................................... 22

**Other Authorities**

*Black's Law Dictionary* (8th ed. 2009) .......................................................................... 6

*Black's Law Dictionary* (9th ed. 2009) .......................................................................... 6

*The Law Dictionary* (powered by Black's Law Dictionary, Free 2nd ed.) .................................... 6

**Treatises**

6 N.Y. Jur., *Cancellation of Instruments*, § 2-4 .............................................................. 9

## I.    **PRELIMINARY STATEMENT**

Defendant Henry Han-Woong Lee ("Lee" or "Defendant") respectfully submits this memorandum of law in support of his motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendant seeks an Order dismissing all causes of action asserted against him.

The only allegedly operative contract is the "Term Loan Agreement" and its amendments (collectively, the "Purported Contracts"). See Kwak Decl., Exs. 1, 3-5. Plaintiff alleges making a loan to defendant Genesis Digital Assets Pte. Ltd. ("GDA"), but Defendant Lee has no individual obligation to repay it.

Plaintiffs also fail to allege facts support their second (fraud), sixth (breach of fiduciary duties), and seventh (quasi-contract claim) causes of action, and are simply not entitled to the relief they request, if any, under the third (rescission) cause of action, as money damages are adequate. As all tort claims are without merit, Plaintiff's fourth (civil conspiracy) cause of action also fails. Plaintiffs' fifth (accounting) cause of action fails because Defendant Lee is literally unable to provide any accounting of monies neither he nor any company under his control ever received. The eighth (fraud under the Securities Exchange Act ("SEA")) fails because the SEA is not applicable here in the absence of a "security" exchanged between the parties. Lastly, the ninth (piercing the corporate veil) and tenth (personal liability as a partner) causes of action has no legal support whatsoever. Even assuming Plaintiffs' allegations are true, the haphazard allegations cannot support any cause of action.

## II.    **PROCEDURAL HISTORY**

Plaintiffs Higround Ptd. Ltd. ("HPL") and Higround Co. Ltd. ("HCL") (collectively, the "Plaintiffs") initially filed their Verified Complaint naming, in addition to those remaining in the Amended Complaint, the following entities as defendants: Stonefort Consultants, FZC

1

("Stonefort"); Petra Eco Build SDN BHD, West Ranch Capital Management, Jules Corporation, and Jonathan Chan. More than two (2) months later, Plaintiffs withdrew their claims against these entities, but maintain allegations referencing them.

After Defendant Lee filed his motion to dismiss on February 9, 2024, Plaintiffs filed a second amended complaint on February 12, 2024. The filing of that second amended pleading necessitated this re-filing of Defendant Lee's motion to dismiss. The allegations in the second amended complaint closely parallel those in the first amended complaint and, as such, the grounds upon which Defendant Lee seeks dismissal of the claims are substantially identical, with the addition of further arguments to dismiss the ninth and the tenth causes of action.

This motion to dismiss is filed on behalf of Defendant Lee, only, as to his personal liability for Plaintiffs' claim for the payment of $4,750,000 pursuant to a purported loan agreement molded into many different meritless theories of claim seeking the same relief.

### III.   SUMMARY OF ALLEGED FACTS

Defendant Lee vehemently denies the allegations set forth in the Plaintiffs' pleadings, including the Second Amended Complaint ("SAC"), of which falsity is sanctionable. Notwithstanding, in this FRCP 12(b)(6) motion to dismiss, Defendant assumes the allegations in the SAC to be true.

Plaintiffs allege the defendants sought a $5 million loan from Plaintiffs, with which loan defendants were to fund the procurement of certain digital assets license ("DAL"). SAC, ¶ 17. Plaintiffs allege procuring the DAL would have "expand[ed] Plaintiffs' business into foreign markets." Id., ¶ 18.

The operative contracts are the Purported Contracts, which are:

- The Term Loan Agreement, dated April 25, 2019, Declaration of Sean S. Kwak ("Kwak Decl."), Ex. 1;

2

- The Payment Agreement, dated October 23, 2020, <u>id.</u>, Ex. 3;

- The Loan Modification and Collateral Agreement, dated February 2021 (but not signed), <u>id.</u>, Ex. 4; and

- The Addendum to the Loan Agreement, dated April 65, 2022, <u>id.</u>, Ex. 5.

<u>All</u> the Purported Contracts are signed <u>only</u> by Plaintiff HPL and defendant GDA. <u>See generally</u>, Purported Contracts, <u>id.</u>, Exs. 1, 3-5. The sole basis of Defendant Lee's alleged personal liability under the Purported Contracts is a purported guaranty letter dated May 11, 2019 ("Purported Guaranty") under which the guarantor is expressly <u>not</u> Defendant Lee. <u>Id.</u>, Ex. 2.

Plaintiffs further allege Defendant Lee made various – but vague and unsubstantiated – statements that making the loan would be an advisable "investment" and provide Plaintiffs an opportunity to expand into foreign media markets with "little risk." Unfortunately, Plaintiffs' investment ultimately failed. Plaintiffs do not allege Defendant Lee made a misrepresentation of any <u>existing</u> fact, but rather only defendants' "promises." <u>See</u> SAC, ¶ 18 ("Lee …<em>promised</em>…"); <u>id.</u>, ¶ 27 ("the investment <em>would be</em> collateralized …"); <u>id.</u>, ¶ 75 (alleging "representations" <em>after</em> signing the Purported Contract); <u>id.</u>, ¶ 75(b) (representations by non-party); <u>id.</u>, ¶ 75(t) (representations by non-party); <u>id.</u>, ¶ 88 (not a <em>mis</em>representation); <u>id.</u>, ¶¶ 119-124 (representations by non-party); <u>id.</u>, ¶¶ 125-126, 128 (promises of future payment).

While Plaintiffs allege "no work was ever performed" by Defendant Lee and other defendants, as well as those now dismissed, Stonefort, Plaintiffs attach defendant GDA's letter setting forth the usage of the $5 million Plaintiffs loaned, as well as a list of DAL that Stonefort is currently holding. Kwak Decl., Ex. 6. This is precisely what was anticipated in the alleged Joint Venture Agreement ("JVA") and Loan Collateral Agreement. <u>See</u> SAC, ¶ 23.

3

## IV. <u>LEGAL ARGUMENT</u>

### A. <u>Standard of Review</u>

Under the <u>Iqbal</u> standard,

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [ ] A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. [ ] The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. [ ] Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " [ ]

<u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (internal citations omitted) (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 556-57, 570 (2007)). "Dismissal of a complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) is proper where 'it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.' " <u>Munno v. Town of Orangetown</u>, 391 F. Supp. 2d 263, 267 (S.D.N.Y. 2005) (citing <u>Harris v. City of New York</u>, 186 F.3d 243, 247 (2d Cir. 1999)). "The court assumes that all factual allegations in the complaint are true, and draws all reasonable inferences in the plaintiff's favor." <u>Ibid.</u> (citing <u>EEOC v. Staten Island Sav. Bank</u>, 207 F.3d 144, 148 (2d Cir. 2000)).

Here, assuming all facts as true, Plaintiffs fail to state a cause of action against defendant Lee for any of their counts.

**B.  Plaintiff Fails to State a Claim Under the First Cause of Action (Part (b)) for Breach of Contract Against Defendant Henry Lee.**

i.  *Plaintiffs Fail To Allege An Enforceable Contract Between HPL and Defendant Henry Lee.*

Plaintiffs' First Cause of Action, part (b) alleges a breach of contract claim by HPL against the defendants, including Lee. However, Plaintiffs fail to establish Defendant Lee is a party to any contract with either plaintiff. "[T]o plead a cause of action for breach of contract, a plaintiff usually must allege that: (1) a contract exists[,] (2) plaintiff performed in accordance with the contract[,] (3) defendant breached its contractual obligations[,] and (4) defendant's breach resulted in damages. 34-06 73, LLC v. Seneca Ins. Co., 39 N.Y.3d 44, 52 (2022) (internal citations omitted). "A breach of contract claim 'that fails to allege facts sufficient to show that an enforceable contract existed between the parties is subject to dismissal.' " Fuji Photo Film U.S.A., Inc., 669 F. Supp. 2d 405, 412 (S.D.N.Y. 2009) (emphasis added) (quoting Berman v. Sugo LLC, 580 F. Supp. 2d 191, 202 (S.D.N.Y. 2008)).

None of the Purported Contracts are signed by Defendant Lee in his personal capacity. To be sure, all Purported Contracts are signed by only Plaintiff HPL and defendant GDA. Kwak Decl., Exs. 1, 3-5. Defendant Lee is not a party to any of the Purported Contracts. Plaintiffs' only plausible basis for liability against Defendant Lee is the Purported Guaranty. See e.g., SAC, ¶ 50.

ii.  *Plaintiffs Fail To Allege An Enforceable Contract of Guaranty Between HPL and Defendant Henry Lee.*

Plaintiffs also fail to establish that Defendant Lee's purported "personal guaranty" is, in the first instance, a personal guarantee at all. "A guaranty is to be interpreted in the strictest manner" White Rose Food v. Saleh, 99 N.Y.2d 589, 591 (2003) (citing Page v. Krekey, 137 N.Y. 307, 314 (1893); Wesselman v. Engel Co., 309 N.Y. 27, 30 (1955)).

The language of the Purported Guaranty reads: "Genesis-Neon Group, LLC and its affiliates … agrees to guarantee…" and makes no reference to Defendant Lee as a guarantor. Kwak Decl., Ex. 2. Plaintiffs impermissibly twist this language and allege Defendant Lee – a person – is one of the "affiliates" of defendant Genesis-Neon Group, LLC ("GNG"). A strict reading of the Purported Guaranty does not support Plaintiffs' claim.

The general meaning of the term "affiliate" undoubtedly <u>excludes</u> any natural person. Black's Law Dictionary defines it as "[a] <u>corporation</u> that is related to another corporation by shareholding or other means of control; a subsidiary, parent, or sibling corporation[.]" <u>Citibank, N.A. v. Franco</u>, 2011 WL 6961404, at *4, ftnt. 2 (S.D.N.Y. Dec. 29, 2011) (emphasis added) (citing *Black's Law Dictionary* (9th ed. 2009)); <u>see also</u> <u>Nat'l Union Fire Ins. Co. of Pittsburg v. Beelman Truck Co.</u>, 203 F. Supp. 3d 312, 320 (S.D.N.Y. 2016) (citing *Black's Law Dictionary* (8th ed. 2009)); <u>see also</u> Kwak Decl., Ex. 7, *The Law Dictionary* (powered by Black's Law Dictionary, Free 2nd ed.) ("<u>Companies</u> that have a shared resources, interests, or business dealings") (emphasis added)). There are different meanings assigned to this term specifically under the Securities Exchange Act ("SEA"), <u>see</u> 17 C.F.R. § 230.405, but the SEA is not applicable in this matter, as discussed below in section IV(G)of this brief..

Notably, Plaintiff does not allege facts that indicate Defendant Lee intended or anticipated the Term Loan Agreement to constitute a securities exchange. As such, the term "affiliates" as used in the Purported Guaranty bears the meaning assigned "affiliate" in non-securities exchange context, which excludes any natural persons such as Defendant Lee. At the very least, the Purported Guaranty is null and void for lack of the necessary "meeting of the minds" for an enforceable contract. <u>KLS Diversified Master Fund, L.P. v McDevitt</u>, 507 F Supp 3d 508, 531 (S.D.N.Y. 2020), <u>aff'd</u>, 21-1263, 2022 WL 2759055 (2d Cir. July 13, 2022) ("The interpretation

of a guaranty is governed by the same principles that govern the interpretation of other forms of contract")

For the foregoing reasons, the Purported Guaranty is woefully incapable of supporting Plaintiff HPL's breach of contract claim against Defendant Henry Lee and Plaintiffs' First Cause of Action against Defendant Lee must be dismissed with prejudice.

### C. Plaintiffs Fail to State a Claim Under the Second Cause of Action for Fraud.

Plaintiff fails to allege any misrepresentation of fact by Defendant Lee. "The elements of a cause of action for fraud require a [(1)] material misrepresentation of a fact, [(2)] knowledge of its falsity, [(3)] an intent to induce reliance, [(4)] justifiable reliance by the plaintiff and [(5)] damages." Eurycleia Partners, LP v. Seward & Kissel, LLP, 910 N.E.2d 976, 979 (N.Y. 2009) (citing Ross v. Louise Wise Servs., Inc., 8 N.Y.3d 478, 488 (2007); Lama Holding Co. v. Smith Barney, 88 N.Y.2d 413, 421 (1996)). Plaintiff fails to satisfy the first element – and therefore all other elements – of a claim for fraud.

Below are all the allegations in the SAC in which Plaintiff alleges any kind of statement ("representation" or "misrepresentation") by any defendants - or reliance by Plaintiffs - prior to April 25, 2019 (i.e., the purported execution of the Term Loan Agreement):

- Paragraph 18: "Lee initially promised that he would obtain the DAL..."

- Paragraph 20: "Lee promised Plaintiffs that with the DAL, he would seek film production and/or distribution opportunities for Plaintiffs ..."

- Paragraph 21: "... Lee ... informed Plaintiffs that securing media and film production opportunities through the DAL would help Plaintiff's business…"

- Paragraph 26: Plaintiff Higround … relied on … GDA and Stonefort's representations as to their industry experience and assurances …"

SAC, ¶¶ 18, 20, 21, 23, 26. None of these are an actionable "misrepresentation of fact."

Under New York law, mere promises of future conduct or events are not actionable bases for a fraud claim. See Yablon v. Stern, 161 A.D.3d 594, 594-95 (N.Y. App. Div. 1st Dep't 2018) (dismissing fraud in the inducement claim, "as it is founded upon non-actionable promises of future conduct or events, rather than present facts [ ] and non-actionable opinion of defendant as to his entity's resources and capability…"); see also Archstone Dev. LLC v. Renval Constr. LLC, 67 N.Y.S.3d 7, 8 (App. Div. 1st Dep't 2017) ("allegations of an insincere promise of future performance under the contract [are] insufficient to plead fraud"); see also Ullman v. Hillyer, 965 N.Y.S.2d 711, 711 (App. Div. 1st Dep't 2013) ("defendant's representations concerning her future intent to perform or her opinions were not actionable as fraud"); see also Jacobs v. Lewis, 689 N.Y.S.2d 468, 468 (App. Div. 1st Dep't 1999) ("… alleged misrepresentations amounted to no more than opinions and puffery or ultimately unfulfilled promises, and in either case were not actionable as fraud").

Our Second Circuit recognizes the same principle. " '[P]romissory statement[s] as to what will be done in the future,' [may] give rise only to a breach of contract claim" and not claims of fraud. Stewart v. Jackson & Nash, 976 F.2d 86, 89 (2d Cir. 1992) (citing Deerfield Commun. v. Chesebrough–Pond's, 68 N.Y.2d 954, 956 (1986)).

Here, Plaintiffs make no allegation whatsoever regarding Defendant Lee's misrepresentation of any "present fact." Referring back to the list of alleged representations and reliance above, paragraphs 18, 20, and 21 are non-actionable promises of future performance, at best; paragraph 26 does not allege the defendants' and/or Stonefort's representations were false. Thus, Plaintiffs fail to allege the first element of fraud, (1) "a material misrepresentation of a fact." Consequently, Plaintiffs also fail to establish (2) Defendant Lee's knowledge of the falsity thereof,

(3) his intent to induce reliance thereon, (4) Plaintiffs' justifiable reliance thereon, and (5) damages resulting therefrom.

For the foregoing reasons, the second cause of action for fraud must be dismissed in its entirety.

**D.  Plaintiffs Fail to State a Claim Under the Third Cause of Action for Rescission.**

Oddly, Plaintiffs assert a cause of action for "rescission" but do not seek such relief. See Amended Verified Complaint, at 26-27. To the extent Plaintiffs do seek such relief, they are not entitled to it.

The equitable relief of contract rescission is not available for Plaintiffs here. "[T]he equitable remedy [of rescission] is to be invoked only when there is lacking complete and adequate remedy at law and where the Status quo may be substantially restored." Rudman v. Cowles Commc'ns, Inc., 280 N.E.2d 867, 874 (N.Y. 1972) (citing 6 N.Y. Jur., *Cancellation of Instruments*, § 2-4).

Importantly, a remedy at law – money damages – is more than adequate here. Indeed, Plaintiff only seeks "compensatory damages," "liquidated damages," "punitive damages," and other money damages as relief under the Third Cause of Action. Moreover, the only "performance" had, allegedly pursuant to the Purported Contracts, is the transfer of monies by HPL to Stonefort. The sole result of the rescission of the Purported Contracts, even if successful, would be HPL's recovery of the same.

Moreover, as is apparent from Exhibit J to the Amended Verified Complaint, Stonefort has already exhausted the $5 million purported "loan" Plaintiffs made to GDA – but transferred to Stonefort. Kwak Decl., Ex. 6. Using those funds, GDA procured licenses in digital assets. Ibid. Rescission of the Purported Contracts does not restore such funds, or otherwise liquidate those licenses, or in any manner restore the status quo.

9

For the foregoing reasons, Plaintiffs' Third Cause of Action for rescission must be dismissed with prejudice.

### E. **Plaintiffs Fail to State a Claim Under the Sixth Cause of Action.**

   *i.   Defendant Lee Did/Does Not Owe a Fiduciary Duty and/or Duty of Loyalty to Plaintiffs.*

Plaintiffs may not maintain duplicative claims for the same "duties," if any, under both a contract and an alleged fiduciary relationship. "A breach of fiduciary duty claim is duplicative when it is based on allegations of fiduciary wrongdoing that are [ ] expressly raised in plaintiff's breach of contract claim." N. Shipping Funds I, LLC v. Icon Capital Corp., 921 F. Supp. 2d 94, 105 (S.D.N.Y. 2013) (internal quotations omitted) (quoting Balta v. Ayco Co., 626 F.Supp.2d 347, 360 (W.D.N.Y. 2009)). "[A] plaintiff may not maintain both a contract claim and a breach of fiduciary duty claim, without allegations that, apart from the terms of the contract, the parties created a relationship of higher trust than would arise from their contracts alone, so as to permit a cause of action for breach of fiduciary duty independent of the contractual duties." Ibid. (emphasis added) (internal quotations omitted) (quoting Balta, 626 F.Supp.2d at 360–61).

In N. Shipping Funds, plaintiff Northern Shipping Funds alleged that its business partner owed and breached its fiduciary duties. This Court found the business dealings the plaintiff had with the defendant were pursuant to a commitment letter and, as such, the claim for breach of fiduciary duties was duplicative of the breach of contract claim. Moreover, to the extent the plaintiff argued the relationship arose from the "overall course of dealing," this Court held "a conclusory allegation that the parties developed a relationship of trust and confidence apart from their contractual relationship is insufficient to plead a fiduciary relationship and survive a motion to dismiss[.]" N. Shipping Funds, 921 F.Supp.2d at 105 (citing Barbara v. MarineMax, Inc., 12-cv-0368, 2012 WL 6025604, at *11 (E.D.N.Y. Dec. 4, 2012)).

Here, Plaintiffs make only conclusory allegations bereft of any factual allegations to support them. The term "fiduciary" appears seven (7) times in the SAC. The first is in paragraph 115, referencing unidentified entities. SAC, ¶ 115. Second is in the title – not an allegation – for the sixth cause of action. Id., p. 30. Third, Plaintiff alleges "superior knowledge" of an unspecified "Defendant" "created a fiduciary relationship" because "Plaintiffs are not sophisticated business entities regarding the DAL."[1] Id., ¶¶ 145-46. Under no law does mere possession of superior knowledge create fiduciary duties. The fourth and fifth references appear in the prayer for relief – not factual allegations. Id., p. 31. The sixth, in paragraph 155, makes a boilerplate conclusory allegation that "[t]here was a confidential or fiduciary relationship between Plaintiffs and Defendants" – without even identifying which plaintiff and/or which defendant(s). See id., ¶ 155. The foregoing allegations are patently insufficient to support a claim for breach of fiduciary duty or to survive this motion to dismiss. The last (seventh) reference is in paragraph 177, alleging Defendant Lee and defendant GDA breached a fiduciary duty to Plaintiffs, again, with no supporting factual allegations. Id., ¶ 177.

Plaintiffs fail to adequately allege facts evidencing a fiduciary relationship between them and Defendant Lee. Moreover, even if one existed pursuant to the Purported Contracts, those claims must be dismissed as duplicative of Plaintiffs' claim for breach of contract.

ii. _Tort Claims for Breach of Fiduciary Duty and Duty of Loyalty are Barred under the Economic loss doctrine._

Plaintiffs' tort claim in its Sixth Cause of Action for breach of fiduciary duty is barred by the economic loss doctrine. "Where plaintiffs allege primarily economic loss as an injury in a tort claim, the usual means of redress is an action for breach of contract; a tort action for economic loss

---

[1] Plaintiffs also allege to the contrary. See SAC ¶¶ 7, 67 (Plaintiff is in the motion picture industry; DGA has been dormant since incorporation).

will not lie." <u>Grund v. Delaware Charter Guarantee & Tr. Co.</u>, 788 F. Supp. 2d 226 (S.D.N.Y. 2011) (internal quotations omitted) (citing cases). Here, the damages Plaintiffs breach-of-duties claims are duplicative to those alleged under the first cause of action for breach of contract.

"The purpose of this rule is: [T]o keep contract law from drown[ing] in a sea of tort ... [and with this goal in mind] New York courts restrict plaintiffs who have suffered economic loss, but not personal or property injury, to an action for the benefits of their bargains. Thus, [i]f the damages suffered are of a type remediable in contract, a plaintiff may not recover in tort." <u>Ibid.</u> (brackets in original) (quoting <u>Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A</u>, 244 F.R.D. 204, 220 (S.D.N.Y. 2007)).

As such, Plaintiffs cannot maintain a tort claim separate from their breach of contract claim. That Defendant Lee is not a party to the Purported Contracts is of no consequence; Plaintiffs are limited to their claims against the parties in privity to the Purported Contracts and the guarantors - not third or non-parties.

**F.** **<u>Plaintiffs Fail to State a Claim Under the Seventh Cause of Action.</u>**

    *i.* *<u>Quasi-Contract Claims for Unjust Enrichment and Quantum Meruit are Barred By the Existence of a Valid and Enforceable Written Contract.</u>*

Accepting the allegations as true, Plaintiff HPL and defendant GDA executed the Purported Contracts, upon which Plaintiff(s) may seek relief for breach of contract. Any quasi-contract claims, such as unjust enrichment and quantum meruit, are barred by the existence of the Purported Contracts.

"The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter. A 'quasi contract' only applies in the absence of an express agreement, and is not really a contract at all, but rather a legal obligation imposed in order to prevent a party's unjust enrichment.

Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc., 448 F.3d 573, 587 (2d Cir. 2006). Acknowledging the same, Plaintiffs assert their Seventh Cause of Action as an "Alternative to First Cause of Action."

To be sure, "a claim for unjust enrichment [is] a New York common law quasi-contract cause of action[.]" Myun-Uk Choi v. Tower Research Capital LLC, 890 F.3d 60, 69 (2d Cir. 2018). A claim for quantum meruit is, in technicality, the same. "Quantum meruit and unjust enrichment may be analyzed together as a single quasi-contract claim. This is because 'unjust enrichment is a required element for an implied-in-law, or quasi contract, and quantum meruit ... is one measure of liability.' " Learning Annex Holdings, LLC v. Whitney Educ. Grp., Inc., 765 F. Supp. 2d 403, 413 (S.D.N.Y. 2011).

As Plaintiffs cannot maintain both a breach of contract claim and a quasi-contract claim, the latter must be dismissed.

### ii. Defendant Henry Lee Has Not Been "Unjustly Enriched."

Under New York law, a plaintiff seeking relief under a theory of unjust enrichment must show "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." Learning Annex, 765 F. Supp. 2d at 413 (emphasis added). Plaintiffs do not allege any of the defendants received any kind of benefit. Plaintiff fails to satisfy the first prong.

The only allegations of conferring any benefit in the SAC are:

- Paragraph 30: Defendants' repayment of $1,267,698.79 to Plaintiffs.

- Paragraph 42: Plaintiffs' transfer of $1,500,000 to Stonefort.

- Paragraph 43: Plaintiffs' transfer of $3,500,000 to Stonefort.

See SAC, ¶¶ 30, 42-43. Plaintiffs do not allege that any defendant – whether Defendant Lee, defendant GDA, or others – received any kind of benefit. As such, Plaintiff fails to establish the

13

first element that Defendant Lee has been "unjustly enriched" And their claim for unjust enrichment must be dismissed.

*iii. Plaintiffs Did Not Perform Any Services.*

"In order to recover in quantum meruit, the plaintiff must then establish '(1) the performance of services in good faith[;] (2) the acceptance of the services by the person to whom they are rendered[;] (3) an expectation of compensation therefore[;] and (4) the reasonable value of the services.' " Learning Annex, 765 F. Supp. 2d at 413 (emphasis added).

Here, Plaintiffs do not allege the "performance of services" by them. Indeed, assuming the allegations contained in the complaint as true, it was Defendant Lee and/or defendant GDA performing services for Plaintiffs, whether pursuant to the consulting agreement or as an intermediary between Stonefort and Plaintiffs. Thus, Plaintiffs cannot satisfy the first element of a claim for quantum meruit.

For the foregoing reasons, the seventh cause of action must be dismissed as duplicative of and/or as barred by the first cause of action for breach of contract, and further, for failure to plead a necessary element of the claim.

**G. Plaintiff Fails to State a Claim Under the Eighth Cause of Action.**

*i. The Securities Exchange Act Does Not Govern the Alleged Transaction(s) Pursuant to the Term Loan Agreement.*

Plaintiffs allege the Purported Contracts – a simple business loan agreement – constitute an "investment contract" and therefore a "security" within the definition of the Securities Exchange Act.[2] SAC, ¶ 160-161. Not only is this an unacceptable legal conclusion, but to accept this proposition would expand the applicability of the SEA and bring all loan agreements under

---

[2] Defendant Lee assumes the reference to the "Exchange Act" and the "Securities and exchange Act" in paragraph 146-47 are intended to identify the Securities Exchange Act.

the ambits of the SEA, which would be outrageous and contrary to public policy. This would then subject each and every borrower of a bank loan to register their loan agreement with the Securities Exchange Commission. This Court already rejected such a proposition for obvious reasons. See U.S. v. Koenig, 388 F.Supp. 670, 714 (S.D.N.Y. 1974) ("the note must evidence a loan which was given for investment purposes and not for ordinary commercial loan purposes, that notes be given in situations where other securities would otherwise be appropriate, or that the notes be hypothecated, assigned, or negotiated") (emphasis added in parenthetical).

Giving Plaintiffs all benefits of the doubt, by vague reference to Stonefort (SAC, ¶ 165), Plaintiffs imply the combination of the Purported Contracts and the purported joint venture agreement between GDA and Stonefort ("Purported JVA", Kwak Decl., Ex. 8), constitute such an "investment contract." Still, Plaintiffs' other allegations expressly militate against the same by alleging that the Purported Contracts and Purported JVA, if the GDA and Stonefort properly performed, "would [have] give[n] Plaintiffs certain contents distribution rights in the southeast Asia and the middle east" and "thereby expand[ ] Plaintiffs' business into foreign markets." SAC, ¶¶ 17-18. These allegations are indisputable indicia that there was no "investment contract" within the meaning of the SEA, as discussed below.

In the alternative, Plaintiffs also allege that "signing a consulting service agreement [ ] rendered the subsequent Loan [ ] an investment agreement." Id., ¶ 19. But the consulting service agreement has no relevance whatsoever to the Purported Contract, the JVA, or any of the allegations set forth in the SAC. Indeed, Plaintiff does not even attach a copy of the same as one of their twenty-six exhibits to the SAC. In any event, the mere existence of the consulting

agreement also does not support a finding of an exchange of an "investment contract" or "security," as discussed below.[3]

    *ii.   There was No Exchange of "Security" Among the Parties.*

The seminal case on this issue is <u>S.E.C. v. W. J. Howey Co.</u>, 328 U.S. 293 (1946). In <u>W.J. Howey</u>, the Supreme Court construed two contracts – one for the sale of land and the other a service contract for farming on that land – and determined the combination of the two is an "investment contract" within the meaning of the SEA. In so holding, the Supreme Court held, as summarized by this Court:

> [A]n "investment contract" means a contract, transaction, [ ]or scheme whereby a person (1) invests his money (2) in a common enterprise and (3) is led to expect profits (4) solely from the efforts of the promoter or third party and (5) risks loss.

<u>GBJ Corp. v. Sequa Corp.</u>, 804 F. Supp. 564, 567 (S.D.N.Y. 1992) (construing the "five-part test" derived from <u>W.J. Howey Co.</u> and <u>Marine Bank v. Weaver</u>, 455 U.S. 551 (1982)) (citing <u>Department of Economic Development v. Arthur Andersen & Co. (U.S.A.)</u>, 683 F.Supp. 1463, 1472 (S.D.N.Y.1988)). While the <u>W.J. Howey Co.</u> decision construed the meaning of a "security" and "investment contract" in the context of the Securities Act of 1933, 15 U.S.C. § 77b(a)(1), the

---

[3] Defendant Lee does not attach a copy here to avoid potential issues of the introduction of extrinsic evidence. Should the Court wish to consider the consulting agreement as a part of Plaintiff's pleading pursuant to FRCP 10, Defendant Lee will submit a copy upon request. Defendant Lee submits that the Court may so request and consider the same in ruling on this FRCP 12(b)(6) motion to dismiss, as Plaintiff has actual notice of the consulting agreement and alleges it is an anchor document for its eighth cause of action. <u>See</u> <u>DeLuca v AccessIT Group, Inc.</u>, 695 F Supp 2d 54, 60 (S.D.N.Y. 2010) (" To be incorporated by reference, the complaint must make "a clear, definite and substantial reference to the documents… To be integral to a complaint, the plaintiff must have (1) 'actual notice' of the extraneous information and (2) ' 'relied upon the documents in framing the complaint' ' ").

Supreme Court "consistently held the definition of 'security' in the [Securities Exchange Act of 1934, 15 U.S.C. § 78c(a)(10)] is essentially the same[.]" <u>Marine Bank</u> , 455 U.S. at 556, ftnt. 3.

For Plaintiffs to argue their alleged "investment contract" – whatever documents it may comprise –  satisfies the fifth prong would be to contradict their own allegation that, in essence, they did not expect to take any risk. <u>See</u> SAC, ¶¶ 115 -116.[4]

 *iii.* <u>*The Fourth Prong Under the Howey Test is Not Satisfied.*</u>

Importantly, Plaintiffs' allegations expressly preclude the finding of the fourth factor: that Plaintiffs expected profits <u>solely</u> from the efforts of the promoter or third party – ostensibly GDA and/or Stonefort. Indeed, Plaintiffs allege only that GDA and/or Stonefort would have obtained certain rights for Plaintiffs, <u>not</u> that GDA and Stonefort would have generated any profit that Plaintiff would simply collect. The only means to generate profit was for <u>Plaintiff HCL</u> to, upon acquisition of those rights, expand its business into foreign markets. <u>See</u> <u>Id.</u>, ¶¶ 17-18. It is Plaintiff HCL that is "in the motion picture and video industries and produces and distributes media programs, including popular Korean dramas on Netflix." <u>Id.</u>, ¶ 7. Neither GDA nor Stonefort is in such an industry or has the capability or expertise to generate profits from the media rights that were to be obtained. <u>Id.</u>, ¶ 63 ("from its incorporation in 2019 until April 5, 2022, GDA has been dormant."); <u>id.</u>, ¶¶ 28-29 ("Stonefort was not in such a business [of media distribution and marketing, and media content distribution in particular], but only had a business in asset management and general trading.").

To be clear, Plaintiffs allege Defendant Lee "promised Plaintiff that with the DAL, he would week film production and/or distribution <u>opportunities</u> for Plaintiffs…" <u>Id.</u>, ¶ 19 (emphasis). Logically, upon finding that opportunity, it was incumbent upon Plaintiffs to capitalize. Plaintiffs

---

[4] Plaintiffs' First Amended Verified Complaint contains two sets of paragraphs 100-112.

admit: "**Higround would have established relationships with various media companies and likely partnered with them, thereby enhancing its business and increasing the value of the company.**" Id., ¶ 62.

That Plaintiffs may assert they would have relied on GDA and Stone is of no consequence. Of particular import here, the Eleventh Circuit analyzed the third and fourth prongs with a focus on the term "solely":

> As to the expectation of profits solely from the efforts of others prong, "[w]e have held that 'solely' is not interpreted restrictively." United States v. Wetherald, 636 F.3d 1315, 1325 (11th Cir. 2011). Instead, we "look[ ] to the economic reality, focusing on the dependency of the investor on the entrepreneurial or managerial skills of a promoter or other party." Id.. "An investor who has the ability to control the profitability of his investment, either by his own efforts or by majority vote in group ventures, is not dependent upon the managerial skills of others." Gordon v. Terry, 684 F.2d 736, 741 (11th Cir. 1982). "The fact that the investor has delegated management duties or has chosen to rely on some other party does not establish dependency. The investor must have no reasonable alternative to reliance on that person." Id. at 741–42.

Alunni v. Dev. Res. Grp., LLC, 445 Fed. Appx. 288, 296 (11th Cir. 2011) (internal parentheticals omitted). Under this standard, the mere possibility – which is what Plaintiffs allege – that Plaintiffs could have taken a part in generating profit in connection with its purported "investment" renders the SEA inapplicable here.

The Second Circuit takes a more lenient approach, deeming that an investor may have "no reasonable alternative" if he irrevocably delegates his powers, lacks control in a partnership, or lacks business experience and expertise. See Fund of Funds, Ltd. v. Arthur Andersen & Co., 545 F. Supp. 1314, 1348 (S.D.N.Y. 1982); see also S. E. C. v. Aqua-Sonic Products Corp., 687 F.2d 577, 584 (2d Cir. 1982) (emphasis on "economic reality"). Notwithstanding, this does not preserve Plaintiffs' claims: Plaintiffs did not irrevocably delegate any rights, were not bound by any

limitations to their rights, and did not lack the necessary experience to capitalize on and/or generate profits from the DAL. On the contrary, Plaintiffs were the only entities that could plausibly have generated profits from the DAL they expected to obtain.

### iv.  *The Third Prong Under the Howey Test is Not Satisfied.*

Assuming Plaintiffs' allegations as true – that they are entitled to the return of the $5 million loan plus interest – the third prong is also not satisfied. "A common enterprise exists where the 'fortunes of the investors are interwoven with and dependent upon the efforts and success of those seeking the investment or of third parties.' " Funds of Funds, Ltd., 545 F.Supp. 1314, 1347-48 (quoting United States v. Carmen, 577 F.2d 556, 563 (9th Cir. 1978); citing Cameron v. Outdoor Resorts of America, Inc., 608 F.2d 187, 193 (5th Cir. 1979)); see also Alunni, 445 Fed. Appx. at 295 (citing Eberhardt v. Waters, 901 F.2d 1578, 1580 (11th Cir. 1990)).

Here, Plaintiffs allege they are entitled to 7% interest – and 10% upon default – regardless of the success of GDA and/or Stonefort. SAC, ¶ 35-36, 105-111. Central to this lawsuit, Plaintiffs seek to collect $4.75 million, in addition to some $1.26 million already repaid. Id., ¶¶ 30-31. Should Plaintiffs prevail, they would be left with a total collection of $6.01 million: a $1.01 million in profit despite GDA and Stonefort, at least according to Plaintiffs' allegations, not at all succeeding in their endeavor (or not having attempted it at all). Id., ¶ 24 ("the stated purpose of the Loan Collateral Agreement and Joint Venture Agreement was … to explore media and film production opportunities…"); id., ¶ 22 ("… Lee, GDA, and Stonefort never secured media or film production opportunities…"); id., ¶ 67 ("GDA has been dormant"). In such fashion, Plaintiffs admit their "fortunes," the earning of interest, were not at all "interwoven with" the success of GDA.

For all the foregoing reasons, Plaintiffs' Eighth Cause of Action under the Securities Exchange Act must be dismissed in its entirety with prejudice.

19

**H.  Plaintiffs Fail to State a Claim Under the Fifth Cause of Action for Accounting.**

Plaintiffs allege they "delivered [$5,000,000 USD] from a bank in Singapore to GDA by transferring it to Stonefort for the benefit of GDA." Id., ¶¶ 42-43, 96-97. It is unclear what Plaintiffs mean by "delivering the funds to GDA by transferring it to Stonefort." But surely, the money was sent to Stonefort. As such, it is not GDA or Defendant Lee but Stonefort that has "sole and exclusive control over business records relating to the business activity described herein[.]" See id., ¶ 140. This renders Plaintiffs' dismissing their claims against Stonefort all the more puzzling.

To the extent Defendant Lee, as a representative of GDA, possesses any information regarding the use and whereabouts of the $5,000,000 paid to Stonefort, it has already been disclosed. Indeed, this is belied by Exhibit J to Plaintiffs' amended pleading. See Kwak Decl., Ex. 6. Defendant Lee has no more "accounting" to produce since, as Plaintiffs allege, GDA has been "dormant" from its incorporation up until April 5, 2022. SAC, ¶ 67.

**I.  Plaintiffs Fail to State a Claim Under the Fourth Cause of Action for Civil Conspiracy.**

Plaintiffs fail to allege any factual allegations supporting the alleged conspiracy. "[U]nder New York Law, to establish a claim of civil conspiracy, the plaintiff 'must demonstrate the primary tort, plus the following four elements: (1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury'." Abacus Fed. Sav. Bank v. Lim, 905 N.Y.S.2d 585, 588 (App. Div. 2010) (emphasis added) (citing World Wrestling Fed'n. Entertainment v. Bozell, 142 F.Supp.2d 514, 532 (S.D.N.Y. 2001)).

Critically, as set forth above, Plaintiffs fail to state a cause of action for any tort against Defendant Lee. See Section (IV)(C), *supra* (failure to state a cause of action for fraud); Section

(IV)(E), *supra* (failure to state a cause of action for breach fiduciary duty). Thus, without a tort to "anchor" a conspiracy claim, the fourth cause of action for conspiracy must also be dismissed as against Defendant Lee.

### J. **Plaintiffs Fail to State a Claim Under the Ninth and Tenth Causes of Action for "Piercing the Corporate Veil" and "Personal Liability as a Partner."**

For the first time in their *second* amended complaint, Plaintiff alleges two causes of action of similar nature, seeking to hold Defendant Lee liable for the alleged liability of the corporate defendants. Plaintiffs' claims fail as these "causes of action" are in fact not recognized as sustainable "causes of action," as a matter of law.

"Properly understood, 'an attempt ... to pierce the corporate veil does not constitute a cause of action independent of that against the corporation; rather it is an assertion of facts and circumstances which will persuade the court to impose the corporate obligation on its owners' " Cortlandt St. Recovery Corp. v. Bonderman, 96 N.E.3d 191, 203 (N.Y. 2018) (citing Morris v. Department of Taxation, 82 N.Y.2d 135, 140 (1993)). Simply stated, Plaintiffs are alleging what cannot be maintained as a cause of action. The ninth cause of action must be dismissed.

Plaintiffs' claim for Defendant Lee's "liability as a partner" of Neon Partners, LLC,[5] is factually and legally unfounded. While it is unclear which New York law Plaintiff references, New York's Partnership Law, seems the most relevant and provides:

> (a)  Except as provided in subdivision (b) of this section, all partners are liable:
>
> 1.   Jointly and severally for everything chargeable to the partnership under sections twenty-four and twenty-five.

---

[5] While, for the purposes of this motion Defendant Lee assumes as true Plaintiffs' allegation that Defendant Lee is a principal of "Neon Partners" or "Neon Partners, LLC," SAC, ¶¶ 9, 12, 13, Defendant Lee is unaware of any legal entity of such name.

> 2.   Jointly for all other debts and obligations of the partnership;  but any partner may enter into a separate obligation to perform a partnership contract.

N.Y. PTR § 26. This section does not apply to Neon Parnters, LLC, because as Plaintiffs allege, it is a limited liability company – not a partnership. Perhaps the name of this LLC bearing the term "partner" confused Plaintiff, ; or it may have been Defendant Lee title of a "senior managing partner." SAC, ¶ 206. Notwithstanding Plaintiffs' confusion, Plaintiffs allege unambiguously that "Neon Partners" is a limited liability company.[6] See, e.g., id., p. 1 (caption, preamble), ¶ 12, 13, 31, 206.

Quite the opposite of general partnership law, the law applicable to a limited liability company is a follows:

> (a) Neither a member of a limited liability company, a manager of a limited liability company managed by a manager or managers nor an agent of a limited liability company (including a person having more than one such capacity) is liable for any debts, obligations or liabilities of the limited liability company or each other, whether arising in tort, contract or otherwise, solely by reason of being such member, manager or agent or acting (or omitting to act) in such capacities or participating (as an employee, consultant, contractor or otherwise) in the conduct of the business of the limited liability company.

N.Y. LLC § 609. Clearly, even if it is true that Defendant Lee is a member and/or holds whatever other titles as Plaintiffs may alleged in Neon Partners, LLC, he is not "liable for any debts, obligations or liabilities" of Neon Partners, LLC, further regardless of any allegation that he "conduct[ed] the business of" Neon Partners, LLC.

As such, both of Plaintiffs' ninth and tenth causes of action must be dismissed.

---

[6] At times, the SAC refers to Neon Partners, LLC as simply "Neon Partners." As defined in the SAC, "Neon Partners" refer to Neon Partners, LLC, and Neon Partners, LLC (identical name), collectively. SAC, ¶ 31. Defendant Lee does not know why Plaintiffs named the exact same (both non-existent) entities twice.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, Defendant Henry Han-Woong Lee respectfully requests the Court grant his motion to dismiss in its entirety, dismissing all claims by Plaintiffs against him.

Dated: February 20, 2024                    Respectfully submitted,

*/s/ Sean S. Kwak__*
Sean S. Kwak
**Kim, Lim & Partners**
460 Bergen Blvd., Suite305
Palisades Park, New Jersey 07650
(t): 201.585.7400
(f): 201.585.7422
seankwak@klplawyers.com
*Attorneys for Defendant*
*Henry Han-Woong Lee*

23